203 N.J. Super. 356 (1985)
497 A.2d 199
MATTEO GIAMMARIO, ET AL., PLAINTIFFS-RESPONDENTS,
v.
TRENTON BOARD OF EDUCATION, A BODY CORPORATE OF THE CITY OF TRENTON, AND TRENTON ADMINISTRATORS AND SUPERVISORS ASSOCIATION, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 28, 1985.
Decided August 8, 1985.
*358 Before Judges KING, DEIGHAN and BILDER.
Robert M. Schwartz, attorney for appellant Trenton Administrators and Supervisors Association.
Merlino, Rottkamp & Flacks, attorneys for appellant Trenton Board of Education (Robert B. Rottkamp, Jr., of counsel and on the brief).
Charles J. Casale, Jr., attorney for respondents Matteo Giammario, et al. (Louis J. DeMille, Jr., on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
In this case we are asked to consider whether the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., (LAD) bars an employer and a labor union from bargaining for a multi-tiered salary schedule which operates to the detriment of older employees.[1] To put it another way, can they bargain for a *359 multi-tiered salary schedule which unintentionally results in the payment of a lesser salary to older employees? An employer, Trenton Board of Education (Board) and a union, Trenton Administrators and Supervisors Association (TASA), appeal from a judgment of the Law Division finding that they have discriminated against plaintiff employees, members of TASA, on account of their age in violation of the LAD and awarding damages to the individuals aggregating about $50,000. The separate appeals of each defendant were consolidated by an order of February 21, 1985.
Collective bargaining agreements between TASA and the Board have provided that employees receive annual additions to their salaries based on longevity (experience in the Trenton system, plus credited service outside the system) beginning in the 20th year, which we sometimes will refer to as increments. The contract in effect just prior to July 1, 1979 provided for annual increments of $400 beginning in the 20th year of service and additional increments of $200 commencing on the 35th and 40th year of service.
For the period commencing July 1, 1979, a new contract was negotiated between the defendants which provided for annual increments of $600 to be paid beginning the 20th year of service and additional $600 increments beginning the 25th, 30th, 35th and 40th years of service.
Following the salary guide which set forth the base salaries, the contract provided:

 LONGEVITY
 Longevity (experience in Trenton plus credited
 experiences outside of Trenton):
 20 years $600 additional
 25 years $600 additional
 30 years $600 additional
 35 years $600 additional
 40 years $600 additional
 which will also be reflected in the maximum.

*360 Facially the provisions appeared to apply to all employees. However, the provision was interpreted by the Board to mean that new $600 increments would apply only to future anniversary dates  that salary increments with respect to anniversary dates occurring prior to July 1, 1979 would continue to be paid at the old rates, i.e. $400 after 20 years and $200 after 35 years and 40 years. The Board's interpretation was confirmed as the contractual intent of the defendants in an arbitration proceeding in which TASA contended its members were entitled to the additional benefits commencing with the effective date of the new contract but based on prior anniversary dates.
Since the new increments were not prospectively operative with respect to employees who had already passed a longevity increment anniversary, the defendants by the contract created a multi-tiered salary schedule which discriminated against those with the greater seniority. Because of the natural correlation between seniority and age, this discrimination fell most severely on the oldest employees. The longevity pay which they were receiving under the old contract was frozen at the old rate. They will receive lesser pay than the younger employees for the same period of service. As of July 1, 1984, 46 of the 92 members of TASA had been eligible for at least one longevity increase as of July 1, 1979. This group had an average age of 54.2 years. Nineteen members who became eligible for the new increased longevity increments in the following five years had an average age of 41.4 years. Plaintiffs contend this unfavorable treatment which results from their seniority amounts to age discrimination barred by our Law Against Discrimination.

*361 Disparate Impact and Age Discrimination

Employment discrimination due to age (or any other invidious classification) is barred by LAD. "It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination ... for an employer, because of ... age ... to discriminate against such individual in compensation ...". N.J.S.A. 10:5-12 a. Similar provisions are contained in the federal Age Discrimination in Employment Act, 29 U.S.C. 623(a) (ADEA). In a sex discrimination case arising under the LAD, our Supreme Court held that the test for a prima facie showing was the same as that used in federal cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 et seq. See Peper v. Princeton University Board of Trustees, 77 N.J. 55, 81 (1978). Because the provisions of the ADEA were modeled after Title VII and are nearly identical in wording and purpose, Title VII standards are applied to ADEA cases. See Oscar Mayer & Co. v. Evans, 441 U.S. 750, 756, 99 S.Ct. 2066, 2071, 60 L.Ed.2d 609 (1979); Lorillard v. Pons, 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978). "[T]he prohibitions of the ADEA were derived in haec verba from Title VII". Lorillard at 584, 98 S.Ct. at 872. We thus conclude, as did the judge below, that plaintiffs' contentions should appropriately be analyzed by examination of federal cases arising under Title VII and the ADEA.
Under Title VII, the United States Supreme Court has recognized two separate theories of relief: disparate treatment and disparate impact.
"Disparate treatment" such as alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. See, e.g., Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265-266, 97 S.Ct. 555 [563-564], 50 L.Ed.2d 450. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.
........

*362 Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involves employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. See infra, at 1861. Proof of discriminatory motive, we have held, is not required under a disparate impact theory. Compare, e.g., Griggs v. Duke Power Co., 401 U.S. 424, 430-432, 91 S.Ct. 849 [853-854], 28 L.Ed.2d 158, with McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-806, 93 S.Ct. 1817 [1824-1826], 36 L.Ed.2d 668.
[Int'l Brotherhood of Teamsters v. United States, 431 U.S. 324, 335, 336, 97 S.Ct. 1843, 1854-1855 n. 15, 52 L.Ed.2d 396, 415 n. 15 (1977)]
[Peper v. Princeton University Board of Trustees, supra, 77 N.J. at 81-82]
Here we are concerned only with disparate impact. The lack of discriminatory motive has been stipulated.
Although academics have generally criticized the view that a disparate impact theory should be used in age discrimination cases, see "A Case Against Extending the Adverse Impact Doctrine to ADEA," 10 Employee Relations Law Journal 437 (1984); Note, "Age Discrimination and the Disparate Impact Doctrine," 34 Stanford L.Rev. 837 (1982); and citations collected at footnote 9, Note, "Disparate Impact Analysis and the Age Discrimination in Employment Act," 68 Minn.L.Rev. 1038, 1039 (1984); contra 68 Minn.L.Rev. 1038, federal courts have generally applied the theory. Leftwich v. Harris-Stowe College, 702 F.2d 686 (8 Cir.1983); Geller v. Markham, 635 F.2d 1027 (2 Cir.1980), cert. den. 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981);[2]United Indep. Flt. Off. v. UAL, 572 F. Supp. 1494 (N.D.Ill. 1983), aff'd 756 F.2d 1274 (7 Cir.1985); Popko v. City of Clairton, 570 F. Supp. 446 (W.D.Pa. 1983); E.E.O.C. v. Borden's, Inc., 551 F. Supp. 1095 (D.Ariz. 1982), aff'd 724 F.2d 1390 (9 Cir.1984); Stone v. Western Airlines, 544 F. Supp. 33 (C.D. Cal. 1982). See E.E.O.C. v. Borden's, Inc., 724 F.2d 1390 (9 Cir.1984); Allison v. Western Union Telegraph Co., 680 F.2d 1318 (11 Cir.1982); Douglas v. Anderson, 656 F.2d 528, 531 n. 1 *363 (9 Cir.1981); Roe v. International Harvester, 604 F. Supp. 57 (N.D.Ind. 1984); Woodfield v. Heckler, 591 F. Supp. 1390 (E.D. Pa. 1984); Grecco v. Spang, 527 F. Supp. 978 (W.D.Pa. 1981). The Third Circuit declined to decide the issue in Massarsky v. General Motors Corp., 706 F.2d 111 (3 Cir.1983), cert. den. ___ U.S. ___, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). However its District Courts have applied the disparate impact theory in age discrimination cases, citing Massarsky as authority. See Woodfield v. Heckler, supra at 1397; Popko v. City of Clairton, supra at 451.
We conclude therefore that the trial judge was correct in applying the impact analysis to the facts of this case and in his conclusion that plaintiffs had made a prima facie impact case of discrimination. His findings on this score are supported by the record. See State v. Johnson, 42 N.J. 146, 162 (1964). This conclusion, however, was not determinative of the case because it did no more than shift the burden of persuasion to the defendants to show their longevity plan was legally justified. Section 4(f)(1) of the ADEA allows an employer to defend a claim of age discrimination on the ground that the differentiation was based on "reasonable factors other than age." 29 U.S.C. § 623(f)(1). The judge below found that the only reasons for the contractual distinctions were economic  that it was significantly more expensive to have to pay everyone on an equal basis than to pay those who had already increments at the old rate. This economic justification he found not to be "a reasonable factor other than age." In so doing, he followed the general rule that cost cannot be a defense to a discrimination claim. See Geller v. Markham, supra at 1034. It is here that we part company with the Law Division judge.
Although monetary considerations cannot normally justify policies which by way of impact discriminate on the basis of age, id., the rule must be different with respect to labor negotiations  an exercise in which fiscal effect is a primary factor. As TASA noted in its brief, it is inevitable in the *364 negotiation process that some employees will fare better than others. If facially neutral negotiating compromises which turn out to have an unintended disparate impact on people of differing age are discrimination under ADEA or LAD, labor negotiations become chaotic. Compromises will often lie in the area of retroactivity which by definition will relate to seniority, a quality with a high correlation to age. Making new benefits prospective only is a rational and usual compromise often employed in negotiations. In his dissent to the denial of certiorari in Geller, Justice Rehnquist questioned the rejection of cost justification. 451 U.S. at 948, 101 S.Ct. at 2030. Our research has disclosed no case in which age discrimination has been found because incidental collateral effects of a salary scale turn out to be fortuitously adverse to an older group of employees. It is our view that in the absence of intentional discrimination, i.e. proof of discriminatory intent and purpose, a facially neutral provision in a labor contract which impacts adversely on an older age group in an incidental manner does not violate the ADEA or the LAD. When such provisions are challenged, plaintiffs are limited to a disparate treatment theory. Whether this is so because the impact theory does not apply or the nature of the bargaining process is "a reasonable factor other than age" is a philosophical question we need not resolve.
Although our determination as to the age discrimination claim makes consideration of appellants' remaining contentions unnecessary, we deem it useful to note that the claims of plaintiffs Hogan and Krichling are, in any event, barred by the previous adverse ruling on the same grievance in the Division on Civil Rights. Hermann v. Fairleigh Dickinson Univ., 183 N.J. Super. 500 (App.Div. 1982), certif. den. 91 N.J. 573 (1982). These plaintiffs filed age discrimination complaints with the Division which resulted in findings of no probable cause. They did not appeal that ruling to the Appellate Division but instituted this action in the Law Division. The final determination of the Civil Rights Division "exclude[d] any other action ... based on the same grievance." N.J.S.A. 10:5-27. Although it is true *365 that violation of the LAD, if it had existed, was of a continuing nature for the purpose of determining whether a claim is barred, see Terry v. Mercer Cty. Freeholders Bd., 173 N.J. Super. 249, 253 (App.Div. 1980), mod. on other grounds 86 N.J. 141 (1981), the issues raised with respect to the new period were precisely the same as those already litigated and determined by the Division on Civil Rights. See State v. Gonzalez, 75 N.J. 181, 186-187 (1977); Hermann v. Fairleigh Dickinson Univ., supra. Having had their day in court, they could no longer litigate the matter. To the extent that Wood v. Garden State Paper Co., 577 F. Supp. 632 (D.N.J. 1983) holds to the contrary, we disagree with it. See Erie R.R. v. Tompkins, 304 U.S. 64, 78-79, 58 S.Ct. 817, 822-823, 82 L.Ed. 1188 (1938); Christian Bros. Inst. v. No. N.J. Interschol. League, 86 N.J. 409, 415-416 (1981).
Reversed.
NOTES
[1] Although the opinion below describes the action as one brought under the state and federal acts (Age Discrimination Employment Act, 29 U.S.C. § 623(a) et seq.), an examination of the complaint discloses plaintiffs sought relief solely under state law.
[2] In a dissent from the denial of certification, Justice Rehnquist said: "This court has never held that proof of discriminatory impact can establish a violation of ADEA", 451 U.S. at 948, 101 S.Ct. at 2030. This view has not slowed the application of the impact theory to age discrimination cases.