**James R. RETTER, Plaintiff,**

v.

**GEORGIA GULF CORPORATION, Defendant.**

**Civ. No. 89–1607(AET).**

United States District Court,
D. New Jersey.

Jan. 28, 1991.

**638**

James R. Retter, Stanford, Conn., pro se.

Walder, Sondak, Berkeley & Brogan, P.A. by Barry A. Kozyra, Roseland, N.J., for plaintiff.

Patrick J. McCarthy, Pitney, Hardin, Kipp & Szuch, Morristown, N.J.; W. Lyman Dillon, pro hac vice, for defendant.

## MEMORANDUM AND ORDER

ANNE E. THOMPSON, District Judge.

This matter comes before the court on defendant's motion for summary judgment. Plaintiff was employed by defendant from March of 1978 until he was terminated in June of 1987. Plaintiff alleges that he was demoted and subsequently terminated in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634 ("ADEA") and New Jersey's Law Against Discrimination, N.J.S.A. §§ 10:5–1 to 10:5–38 ("NJLAD").

A court may enter summary judgment under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates (1) that there is no genuine issue of material fact, and (2) that the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The non-moving party has the burden to establish that a genuine issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Further, the non-moving party cannot rest upon allegations; it must present actual evidence that creates a genuine issue of material fact. *Jersey Central Power & Light Co. v. Lacey Township*, 772 F.2d 1103, 1109 (3d Cir.1985), *cert. denied* 475 U.S. 1013, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986). The court must draw all reasonable inferences in the non-moving party's favor, and must assume that its evidence is valid when considering the merits of the summary judgment motion. *See Pollock v. American Telephone & Telegraph Long Lines*, 794 F.2d 860, 864 (3d Cir.1986).

Plaintiff's only evidence in opposition to summary judgment consists of his own affidavit. Defendant challenges the admissibility of this affidavit on the grounds that it contains conclusory statements, argumentation, hearsay evidence, and inadmissible assertions in violation of Federal Rule of Civil Procedure 56(e) and Local District Court Rule 27. However, if summary judgment is warranted regardless of

whether the affidavit as a whole is invalid, we need not consider admissibility as a separate issue. Accordingly, the court will first consider the merits of defendant's motion.

█ Claimants under both the ADEA and the NJLAD must meet the same burden of proof that is required to establish a claim under Title VII. *Giammario v. Trenton Board of Education,* 203 N.J.Super. 356, 361, 497 A.2d 199 (App.Div.1985). To state a *prima facie* case of age discrimination, plaintiff must show (1) that he belongs to a protected class, (2) that he was qualified for and satisfactorily performing his position, (3) that he was fired in spite of his abilities, and (4) that a younger person was hired to take his place. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (claim under Title VII); *Spangle v. Valley Forge Sewer Auth.,* 839 F.2d 171, 173 (3d Cir.1988) (claim under ADEA). If plaintiff establishes a *prima facie* case, defendant may still obtain summary judgment by "introduc[ing] evidence of a nondiscriminatory animus and show[ing] that the plaintiff can raise no genuine issue of fact as to whether the proffered reason is a pretext for discrimination." *Spangle* at 173. If plaintiff has shown a *prima facie* case, defendant is required to present evidence of valid reasons for its actions which show a "nondiscriminatory animus." Defendant need not *prove* that its reasons were the exclusive basis for termination. *McDonnell,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25.

Defendant bases its motion on two grounds. First, it argues that plaintiff has not presented a *prima facie* case of age discrimination; specifically, that there is no material issue of fact that plaintiff's job performance was unsatisfactory. Second, defendant claims that, even if plaintiff can establish a *prima facie* case, defendant has stated permissible reasons for demoting and then firing plaintiff, and plaintiff has failed to establish that those reasons were pretextual.

Assuming *arguendo* that plaintiff has developed a *prima facie* case of age discrimination, this court finds that there is no issue of material fact that defendant has proffered evidence of legitimate, nondiscriminatory reasons for its actions, and that plaintiff has not presented any material issue of fact whether these reasons were pretextual or whether defendant had other, discriminatory reasons for firing plaintiff. By way of analysis, the court will first review each of defendant's stated reasons for terminating plaintiff, as well as plaintiff's attempts to show an issue of material fact as to these reasons. The court will then examine plaintiff's efforts to raise material issues of fact as to whether defendant's reasons are pretextual, or whether defendant had other, improper reasons for its actions.

Plaintiff was hired when he was 53 years old as a sales manager for Georgia Pacific Corporation. At the time, he had had 30 years of experience in the chemicals industry. It is defendant's contention that plaintiff never performed in a manner commensurate with this experience level during the time he was employed by defendant and that plaintiff was terminated as of June 12, 1987 for poor performance.

Defendant has presented evidence of the following legitimate, nondiscriminatory reasons for its actions: [1]

(1) Defendant received complaints about plaintiff's job performance from three of his former accounts. After the Allied Chemical account was transferred to another salesman, an Allied official said that certain concerns it previously had regarding defendant stemmed from the "previous administration." Mackintosh dep. at 143. Another Allied employee noted that its relationship with defendant had improved since plaintiff left the account. Bryan dep. at 63–64. A General Electric official thanked an employee of defendant for removing plaintiff from that account. Mackintosh dep. at 141–42, 170–71. Further, while plaintiff was working with Reichhold

---

**1.** Defendant raised other reasons which are not discussed here because the court did not find them to be compelling.

Chemicals, defendant was told that it would have better success with Reichhold if defendant removed plaintiff from the account, because plaintiff antagonized buyers for Reichhold. *Id.* at 140–41. These complaints were serious in nature, as plaintiff himself acknowledges.

Plaintiff presents no evidence to counter defendant's allegation of customer complaints. He only asserts that "[n]o customer ... ever at any time complained to me about my work or my conduct thereof." Retter affid. at ¶ 10; *see also id.* at ¶ 48 ("maintained good relations" with Allied); *id.* at ¶ 49 ("kept at all times a good relationship" with General Electric); *id.* at ¶ 50 ("maintained a good relationship at all times with Reichhold Chemicals"). These comments do not contradict the evidence of specific complaints from customers. They are conclusory, having no probative value in a summary judgment proceeding. *Olympic Junior, Inc. v. David Crystal, Inc.,* 463 F.2d 1141, 1146 (3d Cir.1972). Thus, there is no issue of material fact as to this reason for terminating plaintiff.

(2) Plaintiff did not work well with other employees or with supervisors. Defendant claims that plaintiff caused frustration among fellow sales representatives at one meeting because of his poor communication and lack of meaningful participation. Bryan dep. at 48–49. Plaintiff was criticized in his 1982 performance review for "bickering" with other employees. Def. ex. 40; *see also* Melcher dep. at 55–56. A memorandum dated March 23, 1984 indicated that plaintiff "continues to have some difficulty communicating with various members of our sales group." Def. ex. 61. Plaintiff had difficulty communicating with his supervisors. One supervisor asserts that he could not talk productively with plaintiff about plaintiff's job performance. Bryan dep. at 28–29. Another supervisor, Mackintosh, noted that he had difficulty eliciting meaningful responses from plaintiff to suggestions for improvement.

Plaintiff admits only one conflict with a co-worker, and asserts that "that was not a valid dispute." Retter affid. at ¶ 11. He "categorically den[ies]" that he had poor work relationships, *id.* at ¶ 30, but he offers no factual support. Plaintiff claims that "instances sited [sic] by defendant ... are isolated and one-time instances which do not alter the basic good charcter [sic] of relationships I achieved." *Id.* at ¶ 38. Broad, unsupported denials are insufficient to establish issues of fact in opposition to a summary judgment motion. Plaintiff's assertion that "the general allegations [in the March 23, 1984 memorandum] ... remain unjustified," *id.* at ¶ 42, is similarly conclusory. Plaintiff presents evidence which casts doubt on defendant's characterization of the 1984 sales meeting. However, this does not refute other proof of tension with fellow employees and supervisors. He offers no evidence regarding relationships with supervisors. In light of the deposition testimony and internal documents, there is no factual issue that plaintiff had problems with work relationships.

(3) Defendant claims that plaintiff did not gather accurate information from his accounts regarding customer needs and market prices. Defendant needed this information to be competitive, and expected plaintiff to become more familiar with market rates on products which he sold. Mr. Mackintosh decided that plaintiff was incapable of eliciting this information from clients. Mackintosh dep. at 60–61. Defendant cites one example where plaintiff reported that a customer was buying 2.5 million pounds of phenol per year, whereas the actual figure was between 25 and 35 million pounds per year. *Id.* at 90–91.

Plaintiff asserts that he knew his sales territory "well enough to train my younger replacements before my final termination date." Retter affid. at ¶ 57. However, plaintiff gives no actual evidence to establish that he was familiar with market conditions and prices. At most, the evidence suggests that plaintiff could assist in a transitional period, without in any way indicating his ability to carry out his duties. Thus, plaintiff raises no issue as to whether defendant had reason to be concerned by his knowledge of the market.

(4) Defendant presents deposition testimony that plaintiff did not understand its cost structure and sold without regard to profitability. Plaintiff purportedly sold products below cost without permission, and was told by one supervisor to reach a better understanding of profitability factors. Bryan dep. at 17. A 1982 review of plaintiff's performance criticized him for making pricing decisions which did not reflect market conditions. Melcher dep. at 77–78; Def. ex. 58.

Plaintiff "flatly den[ies]" selling below cost or without regard to profitability. Defendant gives no specific examples, and it presents no documentation other than the 1982 review. The issue revolves around credibility of conflicting witnesses, a matter generally relegated to juries. Thus, plaintiff raises an issue as to this particular reason for defendant's actions.

(5) Plaintiff's correspondence with clients and contract documentation was often inaccurate and sloppy. He failed to follow defendant's standards for price letters. In two 1984 memos, defendant noted several dozen mistakes in letters sent out by plaintiff or his supervisees. Def. ex. 44, 45. Plaintiff still had a problem with price letters in 1987, issuing three letters which offered retroactive prices, against company policy. Def. ex. 52. He failed to send price change letters in 1986 regarding methyl methacrylate accounts. Def. ex. 47. On May 15, 1986 and again on August 7, 1986 plaintiff sent to a single client two letters with differing price quotes for the same product. Def. ex. 53. Defendant notes that plaintiff should have sent one letter laying out reasons for the different prices. Plaintiff did not always explain contract terms, such as expiration dates and specifications. Thus, one 1986 letter did not include the expiration date on a methanol offer, Def. ex. 52, and another 1986 letter did not set forth product specifications. Mackintosh dep. at 156–57. In another instance, plaintiff promised a level of purity for phenol which exceeded defendant's specifications. Def. ex. 53.

In the face of these numerous, specific examples of errors and inaccuracies, plaintiff offers the conclusory and unclear statement that "[t]he small number of instances of alleged inaccurate and sloppy price letters cited is itself an inaccurate comment." Retter affid. at ¶ 30. Plaintiff's assertion, without factual support, that "[m]y price letters to customers never at any time contained inaccuracies or incorrect price quotes" is nothing more than an unsupported denial. Plaintiff says that he "could not see all letters that went out of my office or from my salesmen," *id.* at ¶ 33, but as supervisor he was responsible for such mistakes. Plaintiff is also incorrect in his assertion, *id.* ¶ 33, that defendant has not presented examples of sloppy or inaccurate letters. *See* Def. ex. 52. Plaintiff's denial of the assertion that he failed to send out price letters on methyl methacrylate, Retter affid. at ¶ 54, presents an issue of witness credibility, although defendant does produce notes from a meeting in which that issue was discussed. Plaintiff claims that the problem with retroactive price changes was due to mistakes by Mackintosh, but he presents no evidence in support of that contention. Similarly, plaintiff's claim that "[t]he alleged failure to explain contract terms ... were not my problem but those of others in the office" is unsupported by evidence or specificity. In light of defendant's overwhelming evidence, plaintiff has failed to raise any issue of fact as to this particular reason for termination.

(6) Defendant claims that plaintiff had a poor record of account management. He did not "guide the account well" or engage in "follow up selling" for the Schenectady Chemicals and Stauffer Chemicals accounts. Mackintosh dep. at 80–84. He was unable to sell methanol to one account when defendant had that product available. Mackintosh became convinced that plaintiff did not have "the skills to convince people that we were the people that they should buy from ... [or t]he skills to explain ... why we ought to be their supplier...." *Id.* at 84–85. Plaintiff allegedly did not solve a problem involving emergency order patterns with American Cyanamid. *Id.* at 87–88, 106. Defendant also claims that plaintiff was unable to make large caustic

sales in Maine, despite having encouraged defendant to develop facilities for caustic distribution in that state.

Plaintiff claims that his encouragement of facilities for caustics was based not on sales estimates, but on the needs of paper mills owned by defendant in Maine. He also argues that his failure to develop caustic sales in Maine was due to the short period of time that he had the account. Since both parties rely solely on depositions, there remains a question of witness credibility, raising an issue of material fact. Plaintiff offers an alternative explanation of the American Cyanamid problem which may raise a factual issue. However, he produced no evidence to counter the other complaints regarding account management. On the whole, then, plaintiff has not raised an issue of material fact as to this basis for termination.

(7) Plaintiff did not follow proper office procedures. Some of these errors appear to have been relatively minor. For example, he mischaracterized at least one request for action as "urgent." Def. ex. 67. He also made requests for information in "call reports," which are intended to *transmit* information. Def. ex. 69; Mackintosh dep. at 166–67. However, some of these errors were more serious. Plaintiff did not follow office procedure for documenting contracts. For example, plaintiff failed to obtain clearance from the legal department for purchase orders on at least two occasions, and did not always ensure that changes were agreed upon before the contract was executed. Def. ex. 39.

In response, plaintiff "categorically den[ies]" that he did not follow contract procedures. Retter affid. ¶ 30. This unsupported denial is insufficient. Further, his assertion that he followed contract pro-

cedures, without any evidence, does not present an issue of material fact, particularly in light of defendant's contemporaneous memorandum addressing this problem. Def. ex. 39.[2] Plaintiff argues that the "urgency" problem happened only once. However, defendant only alleges one occurrence, which plaintiff admits.

(8) Defendant also asserts that plaintiff had a poor sales record, and did not perform as well as other sales representatives. Plaintiff claims that he was a successful salesman. Both parties rely on depositions and affidavits. Thus, the court is left with a question of witness credibility as to this particular basis for defendant's actions, and there remains a factual issue.

While plaintiff was able to present issues of fact about a few of defendant's proffered reasons, most of these claims stand up to summary judgment scrutiny. Defendant's evidence more than satisfies the requirement under *Spangle* that defendant show "nondiscriminatory animus."[3]

Defendant has proffered legitimate reasons for firing plaintiff, and the burden shifts to plaintiff to present a material issue of fact as to whether these reasons were pretexts for improper discriminatory reasons. However, plaintiff fails to carry this burden. He submits no actual evidence that these reasons are pretextual. Instead, he presents assertions and denials, which are not enough to counter defendant's motion for summary judgment. *Lacey Township*, 772 F.2d at 1109.

As already discussed, plaintiff has failed to raise any issue as to whether the majority of defendant's reasons for its actions are pretextual. For example, while plaintiff "categorically" denies that his letters to customers contained inaccuracies, he sub-

---

**2.** Plaintiff asserts that this memorandum "states that the problem is overcome." (Retter affid. ¶ 31.) In fact, the memorandum states only that one of several problems has been largely resolved. Plaintiff's claim that this memorandum "contains praise for my performance on the Rohm and Haas contract" is incorrect; there is no laudatory language.

**3.** Plaintiff's claim that he received positive comments while employed by defendant, *see, e.g.,*

Retter affid. at ¶ 6, does not alter the conclusion that defendant has shown nondiscriminatory reasons for termination. Defendant need not prove that plaintiff's performance was without any merit whatsoever; it need only show that it had valid reasons for its actions. Further, plaintiff's conclusory statement that his performance was "completely up to the standards of the company," *id.* at ¶ 9, is directly disproved by defendant's evidence, discussed above.

mits no proof, and thus fails to create an issue of material fact. Other responses to defendant's proffered grounds are similarly insufficient.[4]

Nor is it enough for plaintiff to substitute his own judgment for the defendant's. The decision to demote and fire plaintiff need not be sound business practice. Defendant must only demonstrate that it had legitimate, nondiscriminatory reasons for its actions. *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir.1988).

Plaintiff asserts (and defendant denies) that he was given no feedback or criticism of his work, and that defendant's actions were made without warning. *See, e.g.,* Retter affid. at ¶ 22, 24. Plaintiff argues that this supports his claim of pretext; that defendant felt compelled to come up with reasons after the fact. *Id.* However, he gives no evidence to support this assertion. Plaintiff relies on a Seventh Circuit case for the proposition that an employer must inform an employee of job expectations. *Kephart v. Institute of Gas Technology*, 630 F.2d 1217 (7th Cir.1980). While *Kephart* requires an employer to make job expectations known, it appears that the decision does not actually require employers to follow this up with critiques of an employee's performance. Further, the Third Circuit has clearly stated that "from a legal perspective managers are not compelled to convey their dissatisfaction to employees." *Healy*, 860 F.2d at 1216. Thus, the court need not consider the merits of plaintiff's argument.

■ Even if plaintiff could show that defendant's reasons for demoting and terminating plaintiff were pretextual, he must still establish that defendant's actions were discriminatory. *Spangle*, 839 F.2d at 173. Plaintiff fails to present any evidence which suggests that he was personally sub-

jected to age discrimination; instead, he relies on unsupported assertions. For example, plaintiff's affidavit states that "the only reason for [demoting plaintiff] was ... the desire to bring in Macintosh [sic], a younger employee." Retter affid. at ¶ 46. However, plaintiff gives no evidence that plaintiff was demoted in order to "bring in Mackintosh," let alone that Mackintosh was assigned *because* he was younger. Plaintiff's allegations that Mackintosh tried to "create problems ... because of my age and higher compensation," *id.* at ¶ 53; that defendant wished "to get rid of other, more highly paid employees, such as myself, ... to pay off its heavy debt load," *id.* at ¶ 44; and that defendant criticized plaintiff "to put [defendant] in the frame of mind to discharge me because my age was allegedly interfering with my work," *id.* at ¶ 61, are similarly conclusory and unsupported.

Plaintiff states that "I was one of the older persons on the payroll whom defendant was anxious to get rid of." *Id.* at ¶ 14. However, plaintiff presents insufficient evidence to back up his assertion. Defendant presents convincing evidence to show that its termination practices were not discriminatory. From 1985 until mid–1987, when plaintiff was terminated, forty persons were terminated due to elimination of positions. Twenty-one of these employees were more than forty years old, and nineteen were less than forty years old. Petersen affid. at ¶ 10. Thirty-six employees were discharged for cause, twelve of whom were more than forty years old, and twenty-four of whom were less than forty years old. *Id.* at ¶ 11. Thus, there is no evidence of discriminatory firing patterns.[5]

Plaintiff admits that his only "evidence" of discrimination consists of certain hearsay evidence that four employees were forced to retire. Retter dep. at 101–05. There is no indication that they were forced

---

**4.** Plaintiff argues that he has established through his *prima facie* case that defendant's reasons are pretextual. Although evidence used to establish plaintiff's *prima facie* case may be considered to determine whether the proffered reasons are pretextual, *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207

(1981), in the instant case that evidence does not present any proof of pretext.

**5.** Nor does plaintiff present any evidence to support his claim that Mackintosh "was anxious to remove me, as well as other older persons in the company, because he believed I presented an obstacle to his ambitions for promotion within the company." Retter affid. at ¶ 15.

to retire because of age discrimination. Plaintiff's own statements only indicate that they were older employees who were terminated. Indeed, defendant has presented evidence that all four either were fired or accepted retirement based on legitimate, nondiscriminatory reasons. According to evidence presented by defendant, Mr. Fergesen was fired for poor job performance. Marshall affid. at ¶ 5–11. Mr. Battcock was similarly terminated for cause. Mackintosh dep. at 176–80; Def. ex. 72–76. A third employee, Mr. Panulas, accepted retirement when his job was eliminated, *id.* at 42–43, and a fourth, Mr. Klemp, accepted retirement because of poor performance and because his position was being eliminated. *Id.* at 144–45.

In response to this strong evidence, plaintiff can only assert that defendant's explanations are "disingenuous," without providing any facts to back up this assertion. Retter affid. at ¶ 64. He attempts to present alternative theories, but they are unsupported by any evidence. *Id.* Thus, plaintiff has not established that there is any issue of material fact on this particular issue.

Since summary judgment in favor of defendant is warranted, the court need not consider whether plaintiff's affidavit is admissible under Rule 56(c) and Local Rule 27(A). Defendant has requested that sanctions be imposed under Local Rule 27(A) for plaintiff's affidavit. Plaintiff's affidavit, however, was not wholly without merit, as indicated by the fact that he was able to raise issues of fact regarding two of defendant's proffered reasons for discharge. Since the awarding of sanctions under Local Rule 27(A) is up to the court's discretion, we will refrain from exercising that discretion.

For the reasons presented in this opinion, it is therefore on this 28th day of January, 1991

ORDERED that defendant's motion for summary judgment be and hereby is granted, and plaintiff's complaint hereby is dismissed, and it is further

ORDERED that defendant's motion to strike the affidavit of James R. Retter be

and hereby is denied as moot, and it is further

ORDERED that defendant's petition for sanctions under Local Rule 27(A) be and hereby is denied.