791 A.2d 1118

ANTHONY CONSTANTINO, PLAINTIFF–APPELLANT, v. BOR-
OUGH OF BERLIN, A MUNICIPAL CORPORATION, WILLIAM
CASEY, ROBERT GLASS, JOSEPH KESKES, MARIE KNOTT,
EDWARD SHIELDS, WILLIAM TOY, AND MILLARD WILKIN-
SON, DEFENDANTS–RESPONDENTS, AND DENNIS CHANCE,
DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted February 4, 2002—Decided March 7, 2002.

328

Before Judges PETRELLA, KESTIN, and ALLEY.

*James E. Crovo*, attorney for appellant.

*Higgins, Long & Bonfiglio*, attorneys for respondents (*Peter J. Bonfiglio, III*, on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

This appeal by Anthony Constantino challenges the consequence of retroactive federal legislation on State law as to enforcing the maximum age limit of thirty-five on a municipality in its hiring of law enforcement personnel. Constantino contends that he was not hired due to his age being over fifty during a three year period when states were not permitted by federal legislation to classify or discriminate on the basis of age. On cross-motions for summary judgment the judge granted defendants' motions and denied Constantino's motion for partial summary judgment. Constantino appeals the adverse rulings. He also argues that the federal legislation should only have prospective effect on *N.J.S.A.* 40:14–

127 and that he should have been granted partial summary judgment. We reject Constantino's contentions and affirm. Despite his claim, subsequent federal law clearly had retroactive effect, and preexisting and longstanding New Jersey law that specifically prohibited municipalities from hiring persons as police officers under age twenty–one or over age thirty-five once again became enforceable.

Constantino alleged discriminatory hiring practices based on age under New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–1 *et seq.* He claimed [1] that discrimination occurred on April 15, 1996 and August 19, 1996, when he was age fifty-five.

Constantino began working as a part-time police officer in the borough in 1986 and was reappointed yearly to the position by the mayor and council. In 1996 the borough sought to employ a full-time police officer. The borough hired as a full-time officer Anthony Giannini, then twenty-six years old, in April and hired another, Michael Merlino, age thirty-five, in August 1996.

Deposition testimony indicated that whenever there was a position open for a full-time police officer an advertisement would be placed in a newspaper and applications would be received. The chief of police would screen the applications and then recommend to the police committee, consisting of himself, the borough administrator and three council members, which candidates should be interviewed. Typically, between two and four names were recommended. The mayor would then interview these candidates. Upon completion of the interview process, the mayor would recommend to the council the name of the individual who should be hired. The council would then vote to hire one individual for each open position.

---

[1] Constantino added counts alleging violations of 42 *U.S.C.A.* § 1983 and reprisals against him for filing a notice of claims against the defendants. However, these issues were not addressed during the hearing on summary judgment and are not raised in either party's briefs on appeal. Hence, they are deemed waived and we need not address them.

*N.J.S.A.* 40A:14–127 prohibits the hiring of police officers under the age of twenty-one and over the age of thirty-five. Because this statute was preempted for a period of time by the federal Age Discrimination in Employment Act (ADEA), 29 *U.S.C.A.* § 621 *et seq.*, it has not always been enforceable. Constantino claims that he was not hired in April and August 1996 because of his age, and this was in violation of the ADEA. It was unclear whether Constantino ever formally applied for the full-time position or if he ever expressed interest to anyone in the borough of his intention to seek that position.

## I.

*N.J.S.A.* 40A:14–127, enacted in 1971 by *P.L.* 1971, c. 197, § 1, provides, "Except as otherwise herein provided, no person shall be appointed as a member or officer of the police department or force in any municipality who is under 21 or over 35 years of age." New Jersey had also in effect the Law Against Discrimination (LAD) (*N.J.S.A.* 10:5–1 *et seq.*),[2] which provided in *N.J.S.A.* 10:5–4:

> All persons shall have the opportunity to obtain employment, and to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, publicly assisted housing accommodation, and other real property without discrimination because of race, creed, color, national origin, ancestry, age, marital status, affectional or sexual orientation or sex, subject only to conditions and limitations applicable alike to all persons. This opportunity is recognized as and declared to be a civil right.

The LAD also provides: "Nothing contained in this act or in *P.L.* 1945, c. 169 (C. 10:5–1 *et seq.*) shall be construed to require or authorize any act prohibited by law...." *N.J.S.A.* 10:5–2.1. Under these provisions a municipality could lawfully deny employment to a person over the age of thirty-five in its police force.

Under the terms of the ADEA as originally passed by Congress in 1967 and enacted, it was unlawful for an employer to refuse to hire or to discharge a person on the basis of age. 29 *U.S.C.A.*

---

[2] This statute was originally enacted by *L.* 1945, c. 169, effective April 16, 1945, and amended in various respects from time to time thereafter.

§ 623(a)(1). The ADEA was later held to be applicable to state and local governments. *EEOC v. Wyoming,* 460 *U.S.* 226, 243, 103 *S.Ct.* 1054, 1064, 75 *L. Ed.*2d 18, 33 (1983). In 1986, Congress amended the ADEA to allow states to refuse to hire an applicant for a police officer or firefighter position on the basis of age if state law permitted such a restriction and the individual had attained the age limit by March 3, 1983.[3] 29 *U.S.C.A.* § 623(j)(1)(A). Constantino was born on December 15, 1940, and thus would have been forty-three years old in 1983, well beyond this State's limitation of thirty-five years of age for hiring new police officers. The effect of this amendment to the ADEA was that states and municipalities could hire for those positions using age restrictions without violating this federal act.

When subsection (j) was originally added to the ADEA, it contained a sunset provision that caused it to automatically expire on December 31, 1993, upon the failure of Congress to timely act to continue the provision. Congress failed to renew subsection j. Thus, the ADEA once again became fully applicable to hiring practices of the states for police and fire officers.

Congress revitalized subsection (j), effective September 30, 1996, by passing a repeal of the repealer or sunset provision of the original amendment. Age Discrimination Amendment of 1996, *Pub.L. No.* 104–208, 110 *Stat.* 3009–23 (codified as amended at 29 *U.S.C.A.* § 623(j)). Thus, the exception to the ADEA in the hiring of law enforcement and fire officers using age as a criterion was again permissible. The alleged discrimination in the case at bar occurred on April 15 and August 19, 1996, prior to the re-enactment of subsection (j). However, the repeal of the repealer in effect gave the statute retroactive effect to December 31, 1993. The State Attorney General so construed the repealer and issued Formal Opinion No. 1–1997 on February 25, 1997, referring to the

---

[3] This was one day after the Supreme Court decided *EEOC v. Wyoming,* 460 *U.S.* 226, 103 *S.Ct.* 1054, 75 *L.Ed.*2d 18 (1983).

retroactive effect of Congress' repeal of the repealer in the following language:

> ... This repeal of the "automatic repealer" of the amendments was made retroactive to December 31, 1993. The practical effect of the "repeal of the repealer" is that the State statutory provisions providing for mandatory retirement ages and maximum age hiring cut-offs are now again enforceable....
>
> ... Thus, all hiring and discharge decisions made by appointing authorities during the period between December 31, 1993 and September 30, 1996 are arguably affected by this change in law.

■ We agree with his analysis. When Congress repealed the sunset provision of 29 *U.S.C.A.* § 623(j), the age restrictions on hiring police officers was again immediately enforceable. When a state law is preempted by federal law, it still exists, but becomes unenforceable and suspended. *General Electric Co. v. Packard Bamberger & Co.,* 14 *N.J.* 209, 218–219, 102 *A.*2d 18 (1953). *See* Sutherland, *Statutory Construction* (3d ed., Horack, 1943), sec. 2027, p. 501–502, to the effect that repeal of the federal legislation reinstates or revives the once preempted state law without further action needed by the State Legislature. *See also* to the same effect Field, *The Effect of an Unconstitutional Statute* (1935), p. 286 *et seq.*

■ Although retroactive application of laws is generally disfavored, *Gibbons v. Gibbons,* 86 *N.J.* 515, 521, 432 *A.*2d 80 (1981), a clear intention by the Legislature that retroactive application is intended will be given effect. *Phillips v. Curiale,* 128 *N.J.* 608, 618, 608 *A.*2d 895 (1992). Courts recognize that retroactive laws enacted pursuant to the police power may impair the rights of individuals, *Rothman v. Rothman,* 65 *N.J.* 219, 225–226, 320 *A.*2d 496 (1974), but where the public interest sufficiently outweighs the impaired private right, retroactive application is permissible. *State Troopers Fraternal Assoc. v. New Jersey,* 149 *N.J.* 38, 57, 692 *A.*2d 519 (1997).

■ Here, the public interest in retroactive application of the ADEA modification with subjection (j) outweighs an individual's private rights. Acknowledging the public need for an efficient police force, New Jersey prohibited the hiring of police officers

over the age of thirty-five and prohibited such claims from being pursued under the LAD. Recognizing the legitimate state interest in this area, Congress passed the repeal of the repealer, thus allowing the states to enforce their maximum age requirement laws. In the congressional debates on the amendment, the concerns of Congress focused on the inherently dangerous nature and the physical demands of law enforcement. Congress recognized and stressed the need for local governments to be able to make their own hiring decisions and to set hiring criteria. *See* 141 *Cong. Rec.* H 3,822 (1995); 142 *Cong. Rec.* S 11,922 (1996). The effect of this provision was to cut off claims against the states under the ADEA and to allow state law to govern this field. As previously noted, New Jersey law prohibited the borough from hiring Constantino and the LAD does not conflict with the extant state law. Hence, we are satisfied that the public interest presented in the legislative history supports retroactive application, despite any perceived infringement on Constantino's asserted rights.

Constantino argues that the purpose of the retroactive effect of the repeal of the repealer was to keep numerous claims based on alleged discriminatory practices out of the federal courts. The intent of Congress, according to Constantino, was to require litigants to seek relief in state courts under state anti-discrimination laws, such as the LAD. The ADEA allows aggrieved parties to be able to pursue claims under state law theories and was never intended to preempt the area of age discrimination. *See* 29 *U.S.C.A.* § 633(a).[4]

Constantino suggests that because during the period between December 31, 1993 and September 30, 1996, it was unlawful, due to federal law, for the borough to deny him employment as a full-

---

[4] 29 *U.S.C.A.* § 633(a) states:

Nothing in this chapter shall affect the jurisdiction of any agency of any State performing like functions with regard to discriminatory employment practices on account of age except that upon commencement of action under this chapter such action shall supercede any State action.

time police officer based on his age, New Jersey's LAD should provide him a remedy. However, nothing in either the repeal of the repealer or its legislative history supports the proposition that the purpose of retroactive effect of the repealer was solely to prevent claims in federal court.

If the repeal of the repealer did have retroactive application, Constantino alleges that, notwithstanding Congress' intent, the Attorney General's Formal Opinion No. 1–1997 required only prospective application of *N.J.S.A.* 40A:14–127. The appellant relies on, but misreads, the Attorney General's opinion. The Attorney General did call for a uniform date for the application of *N.J.S.A.* 40A:14–127, but only for the purpose of providing clarity to municipalities as to the status of individuals who, but for the ADEA, would not have been able to be hired. The Attorney General's formal opinion stated that such persons did not have to be discharged as a result of the repeal of the repealer because this would be unfair to individuals who relied on the ADEA in obtaining their employment. However, Formal Opinion 1–1997 also concluded that pending applicants for police or fire officer positions who were over the age of thirty-five were to be denied appointments, based on *N.J.S.A.* 40A:14–127.[5]

In this case, summary judgment was properly granted dismissing the complaint against all defendants. In summary, due to the retroactive nature of the repeal of the repealer, hiring restrictions in the statute based on age for police and fire officers were permissible in April and August 1996. When 29 *U.S.C.A.* § 623(j) was again active, *N.J.S.A.* 40A:14–127 became valid once again. New Jersey's LAD thus affords Constantino no discrimination remedy, because the LAD specifically authorizes classification based on age in certain circumstances, including the restrictions on the age for hiring police officers. Thus, Constantino cannot

---

[5] A subsequent letter from the Department of the Treasury, Division of Pensions and Benefits, set May 1, 1997, as the date for applying *N.J.S.A.* 40A:14–127, but only to individuals who had initiated the hiring process prior to February 25, 1997, and who were hired by May 1, 1997.

recover against the borough or its agents. In view of this, the defendants' motions for summary judgment were properly granted.

## II.

■ Turning to Constantino's claim that he was entitled to summary judgment, as noted, even if the repeal of the repealer did not have retroactive effect, thus making discrimination based on age in the hiring of police officers illegal in April and August 1996, a genuine factual issue would exist as to whether Constantino sought the position of full-time police officer, an issue raised by defendants. A party must prove, in a LAD case, that he actually sought employment and was turned down solely due to his age. *Giammario v. Trenton Board of Educ.*, 203 *N.J.Super.* 356, 361, 497 *A.*2d 199 (App.Div.), *certif. denied*, 102 *N.J.* 336, 508 *A.*2d 212 (1985), *cert. denied*, 475 *U.S.* 1141, 106 *S.Ct.* 1791, 90 *L. Ed.*2d 337 (1986).[6] The record is not unequivocal as to whether Constantino sought to be considered for a full-time police officer position during the disputed time periods by either filling out a new application or conveying to anyone his interest in this post. Hence, he would not have been entitled to summary judgment on his motion in any event.

Affirmed.

---

[6] To prove an ADEA case, a plaintiff must first establish a prima facie case of discrimination by demonstrating that he is a member of a protected class, he is qualified for the position sought, and that he was denied the position under circumstances giving rise to an inference of unlawful discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 *U.S.* 248, 253, 101 *S.Ct.* 1089, 1093, 67 *L. Ed.*2d 207, 215 (1981); *McDonnell Douglas Corp. v. Green*, 411 *U.S.* 792, 802, 93 *S.Ct.* 1817, 1824, 36 *L.Ed.*2d 668, 677 (1973); *St. Mary's Honor Center v. Hicks*, 509 *U.S.* 502, 506, 113 *S.Ct.* 2742, 2747, 125 *L.Ed.*2d 407, 415–416 (1993). The analysis of an ADEA claim and a LAD claim have been found to be identical. *Ibid.; Giammario, supra* (203 *N.J.Super.* at 361, 497 *A.*2d 199).