In the Matter of PAUL DAVIER et al., Petitioners, against GRACE A. REAVY et al., Constituting the State Civil Service Commission of the State of New York, et al., Respondents, and SAMUEL WITTE et al., Individually, and on Behalf of Others, Interveners-Respondents.

Supreme Court, Special Term, Albany County, January 6, 1943.

426

*Roy P. Monahan* for petitioners.

*John J. Bennett, Jr., Attorney-General* (*Patrick H. Clune* of counsel), for respondents.

*Samuel Witte, Samuel Zeiger* and *Charles Scholnicoff,* interveners-respondents and attorneys *pro sese.*

MURRAY, J. This is an application under article 78 of the Civil Practice Act relating to a state-wide competitive civil service examination for the position of Motor Vehicle Responsibility Adjudicator, Department of Taxation and Finance. The notice of examination was issued by respondents on June 4, 1942, and the duties which the Adjudicators would be required to render and perform are therein described as follows: " Conducting formal hearings in cases of automobile accidents reported pursuant to the provisions of the New York Motor Vehicle Safety-Responsibility Act; administering oaths; questioning owners, operators and witnesses regarding the facts involved in reported motor vehicle accidents; applying trained judgment to the testimony submitted, both oral and written, for the purpose of determining the issues raised; making final determinations as to the amount of property damage resulting

from automobile accidents or making final determinations as to the existence of bodily injury or death as a result of such accidents, and making final determinations as to the form and amount of security to be deposited by the owners, operators and other responsible parties, as a result of automobile accidents, according to the provisions of the New York Motor Vehicle Safety-Responsibility Act.''

In all, about 1,100 applicants qualified for the examination, which was divided into Part I and Part II, and, of that total number, 98 passed and were placed on an eligible list for appointment.

Petitioners were appointed provisionally, with others, to act as Adjudicators pending the result of the state-wide civil service examination for the establishment of an eligible list from which permanent appointments could be made. Petitioners were appointed temporarily without passing any examination. The salary for the position of Adjudicator was fixed at from $3,600 to $4,500 per annum. Petitioners failed to pass the required examination, and they have instituted this proceeding and ask for an order as follows:

''(a) Directing the respondent State Civil Service Commission to cancel and annul the eligible list promulgated as a result of the examination for Motor Vehicle Responsibility Adjudicator.

''(b) Directing the respondent State Civil Service Commis sion to cancel and annul any certification or certifications made;

''(c) Directing the respondent State Civil Service Commission to order and hold a new examination for the position of Motor Vehicle Responsibility Adjudicator;

''(d) Enjoining the respondent State Civil Service Commission from certifying and the respondent Commissioner of the Department of Taxation and Finance from appointing any of the eligible from the list promulgated by the respondent State Civil Service Commission;

''(e) Enjoining the respondents State Civil Service Commission and the Commissioner of the Department of Taxation and Finance from taking any steps in discharging your petitioners from their positions until the determination of this motion;

''(f) Or, in the alternative, compelling the respondents, State Civil Service Commission to grade Part II of the examination for petitioners, Davier, Goldin, Lent and Phillips and if they succeed in passing Part II to rate them on Training and Experience and on the factors to be tested on the Oral Examination;

"(g) Compelling the respondent State Civil Service Commission to rate petitioner Jeremiah Houlihan on Training and Experience and on the factors to be tested on the Oral Examination;

"(h) And in the event petitioners satisfactorily pass all portions of the examination in accordance with the Civil Service Rules, the respondent, State Civil Service Commission, is directed to insert their names on the eligible list in accordance with their comparative standing;

"(i) And such other and further relief as to this court may seem just and proper."

Heavy competition was anticipated for the positions, and at a meeting of the Civil Service Commission, held on June 4, 1942, the Commission considered the advisability of invoking the flexible passing-grade provision of rule X, subdivision 11, of the Rules for the Classified Civil Service on the then-pending examination for Motor Vehicle Responsibility Adjudicator. The Commission decided that such examination was one of the type and character for which rule X, subdivision 11, had been designed and was specially adapted.

The Civil Service Commission passed a resolution to use the flexible passing grade in the examination and pursuant to resolution the flexible passing-grade provision was incorporated in the announcement for Motor Vehicle Responsibility Adjudicator as follows: "The written examination will consist of two parts. The passing mark on Part I will be the rating obtained by the lowest of the 200 highest candidates in the order of comparative rating, or, if that mark is less than 75 per cent, the passing mark will be 75 per cent. Only those candidates who receive a passing mark on Part I will be rated for Part II. The passing mark on Part II will be the rating obtained by the lowest of the 100 highest candidates in the order of comparative rating, or, if that mark is less than 75 per cent, the passing mark will be 75 per cent."

Petitioners were appointed December 15, 1941, as provisional employees, Department of Taxation and Finance, Bureau of Motor Vehicles, under the title of Motor Vehicle Responsibility Adjudicator. The announcement for the examination for permanent appointments was issued June 4, 1942. It clearly stated all the conditions and requirements necessary to attain passing grade, and also the method which would be followed in making and grading the candidate.

The examination was held July 18, 1942. Petitioners not only had constructive, but actual, notice of the exact scope of the

proposed examination. Not one of the petitioners prior to the examination made the slightest objection or criticism as to the fairness, type or kind of examination proposed to be held. All of the petitioners took the examination.

On the 16th day of September, 1942, the list of successful candidates was duly promulgated by respondents. Petitioners failed to pass the examination, and their services as provisional employees were terminated on September 30, 1942. It was the original intention to make twenty-five or thirty permanent appointments, but, by reason of the lessening of automobile accidents and the lack of funds, only six permanent appointments were to be made.

Petitioners are plainly guilty of laches and bad faith in waiting until after the results of the examination had been announced to voice their objections. It was incumbent on them to act promptly to enforce any alleged rights. An affirmative duty rested upon them in this respect. Petitioners are obviously guilty of inexcusable delay. It would not have been difficult for them to have entered any objections to the proposed passing grade, and the type and subjects of the examination, prior to the examination.

The picture presented by the record is the old story that petitioners desired to " have their cake and eat it too." By their inaction and delay, they have forfeited any rights they may have had. Their statement that they acted promptly to protect their rights is not justified by the record. To tolerate any such practice as proposed by petitioners in this proceeding would cause chaos, confusion and unwarranted expense to the taxpayers and public generally, and tend to undermine and break down the efficacy of administrative bodies in their conduct of governmental affairs.

Many legal decisions condemn the practice of petitioners and are authority for denial of the relief they seek. (*Matter of Deodati* v. *Kern,* 280 N. Y. 366, 372; *Matter of Cowen* v. *Reavy,* 283 N. Y. 232.)

This court approves and adopts the language used by Justice SCHMUCK in *Matter of Caggiano (Kern),* (New York Law Journal, May 6, 1940, p. 2060), wherein he writes: " Having participated in the examination and knowing that the resulting list would be used to replace them, they are now estopped. The same principle and provision of law bars them from questioning the fairness of the test."

The proper rule of law applicable here is also stated by Justice VALENTE in *Matter of Nigro (Kern),* (New York Law Journal,

July 6, 1940, at p. 45), in which case the petitioner was a lawyer acting as a provisional social investigator. He brought a proceeding to enjoin his replacement by one on an eligible list. In that action the court said: "Apparently petitioner realized then the appropriateness of that examination as well as the civil service list that would be promulgated as a result. The attempt to question it at this time by this proceeding does not appeal to the court."

It is a well-understood principle of law that where unreasonable delay will result in prejudice to others, the court will refuse to grant relief. (*Calhoun* v. *Millard,* 121 N. Y. 69; *Patterson* v. *Hewitt,* 195 U. S. 309, 319.)

It is the duty of respondents, the Civil Service Commission, under the Constitution, to call examinations, to prepare the requirements, the questions, the adoption of methods of marking and rating the questions, and, in fact, to make the necessary arrangements for holding and conducting such examinations for the purpose of securing persons of character and mental efficiency best able to serve the State.

Unless respondents act in the performance of their duties in an erroneous, arbitrary, unreasonable, and capricious manner, or abuse the discretion and power invested in them by the law, our courts will not interfere and usurp the functions and duties of the Commission. No charges of illegality, fraud, or bad faith are made by petitioners.

They claim that they were not questioned on the examination respecting automobile construction and human anatomy, and for such omission would have the court void the examination. The position of Motor Vehicle Responsibility Adjudicator is probably one of the most important administrative positions in the State of New York. The Responsibility Act confers upon such Adjudicators the power to determine the amount of damage resulting from automobile accidents to property and to make final determinations as to the existence of bodily injury or death as a result of automobile accidents and to make final determination as to the form and the amount of security to be deposited by owners, operators, and others, as a result of automobile accidents.

By reason of having such broad, extensive, searching and vast power reposed in them, and also by reason of the additional grave responsibility of deciding both issues of fact and law involving automobile accidents, it is evident that to properly fill such responsible positions the persons qualified should not only have book learning, but should be of good character,

endowed with patience and integrity, have a friendly and agreeable bearing and, above all, sound common sense.

The reason why such qualities are demanded is because the majority of the persons appearing before such Adjudicators will be laymen who will tell their own versions of how the accidents in which they were involved, or which they have witnessed, happened. Some of these persons will be learned, many ignorant, some bold, many timid, the honest and the dishonest, the just and the unjust, white and black, and all manner and kind of persons. There will be farmers, mechanics, businessmen, taxi drivers, and all kinds of trades and occupations represented. Their testimony must be carefully weighed before judgment is pronounced. There must be no rash, impulsive or ill-considered decisions rendered. Not only property — the savings of a lifetime — but even life and death hang in the balance, and are dependent on correct, fair and unbiased decisions of the Adjudicators.

It is vital that the Adjudicators have knowledge of the principles of negligence liability and experience in dealing with legal problems. A person might have all the knowledge extant of how automobiles are made, how they run and are operated, and know minutely all the bones, the organs, and everything else about human anatomy, but be a dismal failure as an Adjudicator because of a lack of penetrating intelligence as to human nature, its actions and reactions.

The respondents are charged with the duty of preparing examinations which in their judgment are best adapted to determine the fitness of candidates for State service.

A review by the court of the entire record presented here, which also includes a copy of the examination taken by the candidates, does not show anything whatever which justifies the belated criticism of petitioners. Such examination was eminently fair, proper, and legal. Respondents are invested with discretion to select such questions and subjects as they deem relevant and proper, and, however poorly selected and constructed such questions may be, in the absence of showing an abuse of discretion this court will not interfere and substitute his opinion for that of the Civil Service Commission. (*People ex rel. Moriarty* v. *Creelman,* 206 N. Y. 570.)

I am satisfied that the Commission adopted an entirely proper passing grade. The claim of petitioners, that the amendment of rule X of the Rules for the Classified Civil Service is unconstitutional, is without merit. Such a rule is fair and equitable and does not in any manner discriminate against

petitioners. They had just as fair a chance to pass as any other candidate, and they cannot and ought not to succeed on this motion unless the law gives them the right to say just what kind of examination will suit them, and which they believe is fair. Petitioners have no constitutional or inherent right to be appointed as Motor Vehicle Adjudicators.

The nature of the relief sought by them is that of mandamus. It is an extraordinary remedy and is granted where a petitioner seeks to enforce a clear legal right. (*Matter of Durr* v. *Paragon Trading Corp.*, 270 N. Y. 464, at p. 469.)

Petitioners have not established any right to such an order, and for the reasons stated herein their motion is denied with costs.

Submit order.