THOMAS E. KELLY, *ET AL.*, APPELLANTS, v. CIVIL SER-
VICE COMMISSION, *ET AL.*, RESPONDENTS.

WILLIAM B. REILLY, *ET AL.*, APPELLANTS, v. CIVIL SER-
VICE COMMISSION, *ET AL.*, RESPONDENTS.

Argued April 24, 1962—Decided June 4, 1962.

452

*Mr. Walter D. Van Riper* argued the cause for the appellants (*Messrs. Van Riper & Belmont,* attorneys).

*Mr. William L. Boyan,* Deputy Attorney General, argued the cause for the respondent Civil Service Commission (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

*Mr. T. James Tumulty,* Assistant Corporation Counsel, argued the cause for the respondent City of Jersey City (*Mr. Ezra L. Nolan,* Corporation Counsel, attorney).

The opinion of the court was delivered by

JACOBS, J.   The appellants Thomas E. Kelly and Francis Moran, Captains in the Jersey City Police Department, and the appellants William B. Reilly and Henry E. Grossman, Lieutenants in the Jersey City Police Department, appealed to the Appellate Division from rulings of the Department of Civil Service which granted final certifications of examination lists for the positions of Police Inspector and Police Captain.   While the appeals were pending in the Appellate Division we certified them on our own motion.   See *R. R.* 1:10–1(*a*).

In August 1960 the Department of Civil Service published notices of proposed promotional tests for the positions of Police Inspector and Police Captain in the Jersey City Police Department.   These notices stated that in order to qualify, the applicants must receive a minimum rating of at least 70% in each of the separate written and oral tests. The written examinations were taken by the appellants in December 1960.   Each written examination was a multiple choice test, containing 150 questions.   The identity of the candidate was indicated on his answer sheet by a secret

application number and the answers were machine scored to disclose the number of correct answers, known as the "raw score." Apparently following its long established "flexible passing point" system, the Department did not determine in advance what raw score would constitute the passing mark or "cutoff point." *Cf. Artaserse v. Dept. of Civil Service,* 37 *N. J. Super.* 98, 105 (*App. Div.* 1955); *R. S.* 11:23–4. See *McCann, The Flexible Passing Point* (1959); *Stahl, Public Personnel Administration* 111 (*4th ed.* 1956); *cf. Hymes v. Schechter,* 6 *N. Y. 2d* 352, 160 *N. E. 2d* 627 (1959); *Robbins v. Schechter,* 7 *Misc. 2d* 436, 162 *N. Y. S. 2d* 790 (*Sup. Ct.* 1957), aff'd 3 *A. D. 2d* 1010, 165 *N. Y. S. 2d* 442 (*App. Div.* 1957). As *McCann, supra,* defines the pertinent terms, an absolute passing point is a passing point set at a "specified percentage of the maximum possible score" whereas a flexible passing point can be set at any desired raw score and, when so set, is then "converted to the established passing point." *McCann* lists the suggested advantages and disadvantages of the flexible passing point system of marking and concludes that the advantages greatly outweigh the disadvantages; he notes that the actual experiences in many states indicate that the flexible system helps solve "the problem of inadequate eligibles without impairing the quality of the public service and without jeopardizing the merit system."

After the raw scores of the candidates were computed, distribution sheets were prepared and submitted to Mr. Farrell, the Department's Chief Examiner and Secretary. See *Flanagan v. Civil Service Department,* 29 *N. J.* 1, 7 (1959). These disclosed how many would pass at any designated cutoff point but did not indicate the identities of the candidates. After consulting with the Director of Examinations and without possessing any knowledge as to identities, Mr. Farrell fixed the cutoff point at 90 correct answers. Under a Department policy which permitted it "to go one raw score point lower than the selected point," 89 correct answers would suffice. In explaining why he fixed

a cutoff point lower than 105 (which would have been an arithmetic 70% of the 150 questions) Mr. Farrell testified to the following effect: When he examined the distribution sheets he observed that if 105 were the passing point only 5 (including one who was ill at the time of the examination and was permitted to take a make-up test) of the 17 qualified candidates for inspector and only 3 of the 41 qualified candidates for captain would have passed the written tests. Furthermore, the highest raw score received by any candidate was 119 which was just under 80% of the questions. The foregoing indicated to him that the written tests were too difficult, that the number of eligibles for the later oral examinations would be insufficient, and that a passing point lower than 105 should be fixed. His view as to the difficult nature of the examination questions was confirmed somewhat by the results in Paterson, Plainfield, Lakewood Township, East Orange, Elizabeth and Ewing Township, where the same test for captain was administered contemporaneously with the Jersey City test; only 9 out of 115 candidates in those communities achieved a raw score of 105.

By setting the cutoff point at 90 rather than 105, the number of those eligible to take the oral examination for inspector in the Jersey City Police Department was increased from 5 to 12 and the number of those eligible for the oral examination for captain was increased from 3 to 7. The oral examinations were conducted before a panel consisting of Charles W. Newns and Theodore G. Acchione. Mr. Newns was a member of the Philadelphia Police Force for 30 years before retiring in 1954 as Chief Inspector. He has conducted oral police promotional examinations for the New Jersey Department of Civil Service for approximately 10 years and has averaged about 50 examinations a year. He has also conducted oral police examinations in Connecticut and Pennsylvania. Mr. Acchione is a personnel technician on the staff of the Department. He is a graduate of the Wharton School of Business and the Law School of

the University of Pennsylvania and has had approximately six years' experience in conducting oral examinations.

The oral examinations of the appellants were in the form of interviews conducted by Mr. Newns in the presence of Mr. Acchione and recorded on tape recorders. The formal instructions issued by the Department stated that the candidates were to be given an overall grade and that in determining this grade, consideration should be given to (1) appearance and speaking ability, (2) manner, (3) comprehension and presentation of ideas, (4) maturity of judgment, (5) interest in law enforcement and allied fields, (6) evidence of supervisory and administrative ability and (7) overall evaluation. Mr. Newns recorded his rating of each candidate and Mr. Acchione placed his initials alongside Mr. Newns' signature. None of the appellants received a passing grade of 70% in the oral examination. After they were advised that they had failed, the appellants requested that the Civil Service Commission review their oral grades. In due course, the Commission directed that Mr. Farrell examine the tapes and report to the Commission. Mr. Farrell reviewed not only the appellants' tapes but the tapes of all of the other candidates. He recommended that there should be no changes in the grading and on April 25, 1961 the Commission approved his recommendation.

The Legislature has not sought to prescribe minimum passing grades or precise marking systems but has properly left those matters to the expert judgment of the Commission to be exercised within broad standards embodied in the act. See R. S. 11:3-1; N. J. S. A. 11:6-2; R. S. 11:9-2; R. S. 11:9-3; R. S. 11:21-3; R. S. 11:23-4; R. S. 11:23-6. The Commission is, of course, not precluded from availing itself of modern testing techniques consistent with the underlying objective of competitive selection based on merit and fitness. See N. J. Const. art. 7, § 1, par. 2; R. S. 11:21-3; cf. Dowling v. Brennan, 284 App. Div. 563, 131 N. Y. S. 2d 594, 597 (1954). Mr. Farrell testified that the flexible marking system has been used by the Commis-

sion for "more than 18 or 19 years" and that it is "a nationally accepted practice in examination procedures." It was the subject of some discussion in the briefs and record in *Artaserse v. Dept. of Civil Service, supra,* and was seemingly approved there by Judges Clapp, Jayne and Francis. See 37 *N. J. Super.,* at *p.* 105. We find nothing in it which is unjust or not in furtherance of the objectives of the Civil Service Act. Though an examination is drawn carefully, it nonetheless may prove unfairly difficult and furnish a wholly inadequate list of eligibles. Sound practical and policy considerations may dictate that in lieu of subjecting all candidates to a new examination there be a lowering of any preconceived passing grade or cutoff point. See *Abramson v. Commissioner of Education of State,* 1 *A. D. 2d* 366, 150 *N. Y. S. 2d* 270 (*App. Div.* 1956).

The appellants do not suggest that there was any discrimination or favoritism or that Mr. Farrell knew anything about the identities of the candidates when he fixed the cutoff point at 90 rather than at 105. They do not question his integrity or good faith but do assert that the Department should be obliged to adhere to its examination notice which stipulated that candidates must receive a minimum rating of at least 70%. They say they properly understood this to mean 105 correct answers out of the 150 questions. The Department disputes this understanding and points to the fact that the notice says nothing about weighing or marking methods. In announcing a minimum rating the Department should be very explicit and thoroughly informative, thereby avoiding the possibility of misunderstanding by the candidate. See *Davier v. Reavy,* 179 *Misc.* 425, 39 *N. Y. S. 2d* 269, 272 (*Sup. Ct.* 1943); *cf. Dowling v. Brennan, supra,* 131 *N. Y. S. 2d,* at *p.* 597; *Hymes v. Schechter, supra,* 160 *N. E. 2d,* at *p.* 629. However, we consider that the appellants suffered no legal prejudice here, for their written answers passed them with scores of 105 or more and they then went on to take the independent oral examinations. *Cf. Abramson v. Commissioner of Education*

*of State, supra,* where the court, in refusing to set aside the action of the Board of Examiners in giving each candidate an additional 5% credit, had this to say:

"The action of the Board was wholly consistent with the letter and spirit of the constitutional provision that appointments in the Civil Service 'shall be made according to merit and fitness to be ascertained, as far as practicable, by examination which, as far as practicable, shall be competitive.' Article V, § 6, New York State Constitution. In allowing the 5% credit, the Board adopted a practical method of compensating for the excessive difficulty of the written test. It thus gave candidates who had attained grades of 60% to 64% but who, in the judgment of the Board, were entitled to passing grades, in the written test, an opportunity to go on to demonstrate their merit and fitness in the rest of the examination." 150 *N. Y. S.* 2d, at *p.* 278.

■ The appellants attack the Commission's action in permitting a candidate for inspector who was ill at the time of the examination to take a make-up test. The fact that the candidate was ill is not disputed and the examiner in charge expressed the opinion that the make-up was of "approximately equal difficulty" with the original examination. Substantial considerations precluded delaying the examination because of the candidate's illness, and if he had not been permitted to take the make-up he would, as a practical matter, have been deprived of the opportunity of competing in normal course for higher rank in his profession. *Cf. R. S.* 11:10–7; *N. J. S. A.* 11:22–34. The established practice of the Commission has been to permit make-ups in promotional tests as distinguished from open competitive tests. In applying its practice here, the Commission acted well within its broad discretionary authority. We find nothing of merit in the appellants' contention that the use of a make-up examination violates the letter or spirit of the constitutional and statutory requirements relating to competitive examinations. *Cf. Kaplan, The Law of Civil Service* 160–162 (1958).

■■ The Civil Service Act expressly permits the Commission to require that candidates pass written and oral

examinations (*R. S.* 11:9–3)[1] and the appellants do not question that they were fairly advised that they would have to pass both. They failed to do so and thereby did not qualify but now advance various attacks on the oral examinations. They suggest that since the cutoff point on the written examinations was an arithmetic 60%, the passing grade on the oral examinations should likewise have been 60%. The reason Mr. Farrell took a cutoff point of less than 105 on the written examinations had no applicability whatever to the oral examinations. Furthermore, as he pointed out, when marking oral examinations "there is no so-called raw score set up in the examiner's mind" which is, however, subjectively geared to a standard of 70% as the minimum passing point. The appellants attack the oral examiner's qualifications but we find no substance to their position. They suggest that he should be a "trained psychologist" but the act contains no such requirement and Mr. Newns' extensive experience in police work and as an oral examiner furnished sufficient basis for his current designation by the Commission. The appellants do not question his sincerity and impartiality but address themselves to his methods and evaluations.

Although they have great value when properly administered, oral examinations carry with them patent dangers of abuse and error. See *Civil Service Commission v. Frazzini,* 132 *Colo.* 21, 287 *P. 2d* 433, 441 (1955). In the light of the dangers, the Commission must conscientiously take special care and precautions to insure the goal of selections based exclusively on merit and fitness, but the record is devoid of evidence of default in this regard. All of the oral examinations were fairly conducted in like fashion by a qualified and impartial examiner in the company of a departmental personnel technician and they were

[1] A proposed amendment of *R. S.* 11:9–3, designed to eliminate the Commission's power to prescribe oral examinations, was introduced in the New Jersey Senate on January 16, 1961. See *S.* 45. It failed to emerge from Committee.

fully recorded on tapes. When called upon, the Department's Chief Examiner and Secretary reviewed all of the tapes, recommended no changes, and his recommendation was, in turn, approved by the full Commission. In support of their judicial appeal, the appellants took depositions which included testimony by the examiner and the Chief Examiner and Secretary. We have carefully reviewed the entire record before us including the testimony and transcripts of the recordings of the appellants' oral examinations and find nothing which would justify our upsetting the Commission's ultimate action as "arbitrary, capricious or unreasonable." See *Falcey v. Civil Service Commission,* 16 *N. J.* 117, 123 (1954); *Brotspies v. Dep't. of Civil Service, N. J.,* 66 *N. J. Super.* 492, 497 (*App. Div.* 1961); *Artaserse v. Dept. of Civil Service, supra,* 37 *N. J. Super.,* at *p.* 105.

█ The burden of the appellants' attack on Mr. Newns' methods and evaluations seems to rest on the fact that there were many subjective elements in his examinations. But subjective elements would appear to be inherent in all oral examinations seeking supervisory and personality traits, and their presence may not reasonably be viewed as fatal. See *Stoor v. City of Seattle,* 44 *Wash. 2d* 405, 267 *P. 2d* 902 (1954); *Almassy v. Los Angeles County Civil Service Commission,* 34 *Cal. 2d* 387, 210 *P. 2d* 503 (1939); *Application of Pearl,* 8 *Misc. 2d* 712, 169 *N. Y. S. 2d* 847 (1957), aff'd 5 *A. D. 2d* 739, 168 *N. Y. S. 2d* 943 (1957), appeal dismissed 4 *N. Y. 2d* 905, 151 *N. E. 2d* 88 (1958). In the *Stoor* case the plaintiffs were lieutenants in the fire department who passed their written but failed their oral examination. The oral examiners graded the candidates on the following stated qualifications: "Voice and speech, ability to present ideas, comprehension of problems, judgment, emotional stability, self-confidence, diplomacy, cooperation, and overall estimate of value." The candidates attacked the oral examination on the ground that they were graded "upon the subjective impressions made upon the

examiners by admittedly intangible qualities," but this complaint was summarily dismissed by the Supreme Court of Washington. 267 *P.* 2*d,* at *p.* 905. Similarly, in the *Almassy* case the Supreme Court of California rejected an attack on an oral examination which was designed to ascertain personality factors affecting the efficient discharge of the duties of a probation officer. Justice Spence noted that while the examiner's judgment "was of necessity subjective" it did not follow that it lacked either reliability or validity as a basis of selection. 210 *P.* 2*d,* at *p.* 513. In the *Pearl* case the court rejected an attack by a candidate who had passed the written but failed the oral test in a competitive promotional examination for a position in the insurance department. After referring to the wide discretionary powers of the Commission in the preparation and conduct of civil service examinations, the court stated that the oral examination "was competitive in the sense that all candidates were examined under similar conditions and their performance measured by the same standards and criteria," and that "it was objective in the sense that stenographic minutes and a tape recording were made of the examination which can be and have been reviewed." 169 *N. Y. S.* 2*d,* at *p.* 849. These realistic considerations apply here in full measure, they furnish procedural safeguards and external checks against improper exercise of the administrative power (*cf. Ward v. Scott,* 11 *N. J.* 117, 126–127 (1952)), and they lead us to the conclusion that the rulings of the Commission should be affirmed, without costs.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.