261 N.J. Super. 592 (1993)
619 A.2d 643
JAMES M. BURKE, JR., PLAINTIFF-APPELLANT,
v.
THE TOWNSHIP OF FRANKLIN, JOHN C. LOVELL, INDIVIDUALLY AND IN HIS CAPACITY AS THE TOWNSHIP MANAGER AND POLICE DIRECTOR, AND JOHN BLAZAKIS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 4, 1992.
Decided January 26, 1993.
*594 Before Judges MICHELS and WALLACE.
George G. Frino argued the cause for appellant (Mr. Frino, on the brief).
Arlene M. Turinchak argued the cause for respondents (McGimpsey & Cafferty, attorneys; Ms. Turinchak and Thomas J. Cafferty, on the brief).
The Opinion of the Court was delivered by WALLACE, J.S.C. (Temporarily Assigned).
Plaintiff, James M. Burke, appeals from the grant of summary judgment in favor of defendants, Township of Franklin, John C. Lovell and John Blazakis. We must decide whether defendants' police promotional examination procedure was arbitrary *595 and capricious, and whether defendants discriminated against plaintiff based on age.
In September 1990, the Township announced that it will be accepting applications from the Police Department for four vacant Sergeant positions. Plaintiff, a patrolman, was one of thirteen candidates for the position.
Under § 47-21A of the Township Code, the selection process for promotion of a candidate for the Sergeant position consisted of the following components: seniority; education; promotional evaluation (oral examination); written examination; medical evaluation; and psychological screening.
The selection process provided for the ranking of each candidate based on the sum of all points earned in four categories: seniority; education; oral examination; and written examination. The medical and psychological evaluations were not components in the ranking process but each candidate had to pass the medical and psychological evaluations in order to qualify.
Each of the components was weighted. Seniority carried the least weight, with one point out of four. The oral examination, as a part of the promotional evaluation, carried the most weight with four points out of four. The written examination carried three points out of four and the education component carried two points out of four. Each candidate was then ranked in order of his or her total score and would be selected for promotion in that order.
The Township administered the police promotional examination during November and December 1990. At the time plaintiff took the examination, plaintiff was thirty-nine years old, had been a patrolman since 1977, and had a high school diploma.
The oral interviews were conducted by the Evaluation Board *596 which was comprised of four persons[1]: 1) John Lovell, Township Manager; 2) Chief John Blazakis; 3) Captain Nick Nicoletti; and 4) Ernestine Callier, Director of Social Services. For evaluation purposes, the Board asked twenty-seven questions to each candidate. Each member of the Board would rank the candidate's performance by considering:
[a] Comprehensive and presentation skills in oral communications.
[b] Maturity in judgement
[c] Interest in law enforcement
[d] Evidence of supervisory and administrative ability
[e] Demonstrated knowledge and understanding of the township, including the physical and demographics thereof, as well as an understanding of the operations of township government including the interaction of the various departments thereof.
[f] Knowledge and understanding of Management practices, departmental rules, regulations, policies and procedure.
On December 20, 1990, Lovell notified plaintiff in writing of the final result from his examination. Plaintiff ranked eighth out of thirteen candidates. Plaintiff's scores on the test were:

 RANKING WEIGHT VALUE
Written Test 9 3 27
Promotional Evaluation
(Oral) 4 4 16
Education 1 2 2
Seniority 11 1 11
 ____
 6

As only four positions were open, Lovell informed plaintiff that he was not selected.
On January 14, 1991, plaintiff filed a complaint against defendants alleging arbitrariness and age discrimination in the promotion procedure. Both parties filed a notice of motion for summary judgment. On March 20, 1992, the motion judge granted summary judgment in favor of defendants. We affirm.

*597 I
We note first that neither party argues that the matter was not ripe for summary judgment. Under R. 4:46-2, summary judgement must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgement or order as a matter of law." The party seeking summary judgement has the "burden of showing clearly the absence of a genuine issue of material fact." Judson v. Peoples Bank and Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954). "All inferences of doubt are drawn against the movant in favor of the opponent of the motion." Id. at 75, 110 A.2d 24. "And it is not to be concluded that palpably no genuine issue as to any material fact exists solely because the evidence opposing the claimed fact strikes the judge as being incredible." Id. (citation omitted). "Issues of credibility are ordinarily for the trier of the fact, and the judge does not function as a trier of fact in determining a motion for summary judgement." Id.
On the other hand, summary judgement should not be denied "if other papers pertinent to the motion show palpably the absence of any issue of material fact, although the allegations of the pleadings, standing alone, may raise such an issue. Summary judgement procedure pierces the allegations of the pleadings to show that the facts are otherwise than as alleged." Id. (citation omitted). These standards must be "applied with discriminating care so as not to defeat a summary judgement if the movant is justly entitled to one." Id. at 74, 110 A.2d 24. Based on our review of the record we find no genuine issue of material fact. Summary judgment was appropriate.
Plaintiff first contends that the defendants' police examination procedure was arbitrary and capricious because there was no uniform guidelines or standards employed by the Evaluation Board relating to the grading of the candidates' performance in *598 the oral examination. Plaintiff specifically argues that each evaluator was "not given standards or guidelines to follow with respect to the scoring of those [subjective] questions with respect to an individual's response [at the oral interview]." He argues that a guideline device, such as "an answer key", should have been provided to the Evaluation Board before conducting an oral interview to provide for uniformity in scoring.
N.J.S.A. 40A:14-129, which concerns promotions in municipal police departments, provides in pertinent part:
In any municipality wherein Title 11 (Civil Service) of the Revised Statutes is not in effect, and except in cities of the first and second class, a promotion of any member or officer of the police department or force to a superior position shall be made from the membership of such department or force. Due consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service.
No person shall be eligible for promotion to be a superior officer unless he shall have previously served as a patrolman in such department or force.
In reviewing cases arising under N.J.S.A. 40A:14-129, a municipality's decision in promoting a patrolman to a sergeant will not be disturbed "unless it is clearly arbitrary, capricious or unreasonable." Gaskill v. Mayor and Comm'rs of the Borough of Avalon, 143 N.J. Super. 391, 394, 363 A.2d 359 (Law Div. 1976), aff'd on other grounds, 149 N.J. Super. 364, 373 A.2d 1019 (App.Div. 1977); see also Rox v. Dep't of Civil Serv., 141 N.J. Super. 463, 467, 358 A.2d 819 (App.Div. 1976) ("The courts, however, will intervene to nullify such an examination where it is affirmatively shown to have been manifestly corrupt, arbitrary, capricious, or conspicuously unreasonable.") (citations omitted).
Our Supreme Court has noted that "subjective elements would appear to be inherent in all oral examinations seeking supervisory and personality traits, and their presence may not reasonably be viewed as fatal." Kelly v. Civil Serv. Comm'n, 37 N.J. 450, 460, 181 A.2d 745 (1962) (emphasis added) (citations omitted). Despite their great value under proper *599 administration, "oral examinations carry with them patent dangers of abuse and error." Id. at 459, 181 A.2d 745.
Here, the Evaluation Board consisted of four members who conducted an oral interview with plaintiff in accordance with § 47-21B of the Township Code. It is true that, as plaintiff asserts, the Board was not provided with an answer key for the oral questioning. However, the absence of an answer key in itself does not suggest the procedure was arbitrary or capricious. Having an answer key would not have substantially assisted the interviewers in determining the level of a candidate's ability to communicate orally. This was largely subjective. The purpose of the oral examination was not necessarily to elicit correct responses. Primarily, the oral examination tested a candidate's oral communication skills and other intangible qualities, e.g., maturity in judgment. Further, there was no suggestion that the content of the questions posed to plaintiff were any different from those asked to other candidates. The record is devoid of any evidence of disparity of treatment among the candidates.
Plaintiff cites Rox v. Dep't of Civil Serv., supra, 141 N.J. Super. 463, 358 A.2d 819 (App.Div. 1976) for the proposition that "[u]niformity of treatment is central to valid subjective tests." In Rox, supra, twelve police officers challenged the State Civil Service Commission's decision to affirm the results of the oral examination conducted as a part of the promotional examination. Id. at 465, 358 A.2d 819. Initially, the sixty original candidates were divided among seven boards of examiners. Each board was to interview only the candidates assigned to that board. Thus, each board tested about eight or nine candidates. The court held that this multi-board testing format to be unreasonable, and thus, invalid. Id. at 469, 358 A.2d 819. The court reasoned that this sort of format invites "patent danger of abuse" because "[t]he candidates were competing fairly with only those own particular group rather than with all candidates." Id. at 468, 358 A.2d 819.
*600 On the contrary, in the present case, all of the thirteen candidates were interviewed by the same four evaluators. Further, the one-board format used in the present case is similar to the one approved by our Supreme Court in Kelly v. Civil Serv. Comm'n, 37 N.J. 450, 181 A.2d 745 (1962). In Kelly, the Court approved a single two-person panel conducting an oral interview with all candidates.
Plaintiff cites Kelly, supra, in further arguing that the oral interview procedure was an arbitrary act because it was not recorded. However, the holding in Kelly does not state that the absence of recording of an oral examination automatically constitutes an arbitrary act. The Court regarded the recording of the oral examination as one piece of evidence for a court to consider in deciding whether the oral examination procedure was arbitrary. Id. at 460-1, 181 A.2d 745. The Kelly court did not suggest that an evaluation body must make a recording of the oral examination session. To be sure, recording of the oral examination would have enhanced the examination process here, but we do not find that the lack of a recording is fatal. The test scores were available, and plaintiff was able to depose each of the evaluators.
Plaintiff contends that the oral examination procedure was arbitrary because the evaluators' scoring of plaintiff's performance shows "disuniform treatment." Plaintiff points to fifteen questions out of twenty-seven as requiring "specific answers[2]." Plaintiff argues that the discrepancies among the evaluators' scores for the fifteen questions should not be present because "those questions had a correct answer which should have been given."
However, plaintiff overlooks the fact that all of the questions, including the fifteen, were not designed to elicit "correct" responses only. Based on the inherent subjective nature behind *601 the oral examination, scores are not expected to be the same. However, by having four evaluators present, a fair result could be expected. Based on our review of the entire record, we are satisfied that the examination procedure was not arbitrary or capricious.

II.
Plaintiff next contends that "the defendants discriminated against him because of his age during the sergeant promotional process."
The Law Against Discrimination Act (hereinafter "LAD"), specifically N.J.S.A. 10:5-12a, prohibits employment discrimination based on age:
It shall be unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the race, creed, color, national origin, ancestry, age ... refuses to hire or employ or to bar or to discharge or require to retire ... from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment....
(emphasis added).
In Giammario v. Trenton Bd. of Educ., 203 N.J. Super. 356, 361, 497 A.2d 199 (App.Div. 1985), certif. denied, 102 N.J. 336, 508 A.2d 212 (1985), cert. denied, 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986), the court held that a contention based on employment discrimination due to age should be "analyzed by examination of federal cases arising under Title VII [of the Civil Rights Act of 1964] and the ADEA [The Federal Age Discrimination in Employment Act]."
29 U.S.C.A. § 623(a) provides in part:
It shall be unlawful for an employer 
(1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age....
*602 Further, 29 U.S.C.A. § 631 states, "The prohibition in this chapter [on age discrimination] shall be limited to individuals who are at least 40 years of age." (emphasis added).
The record shows that plaintiff was thirty-nine years old when the alleged age discrimination occurred. Consequently, plaintiff did not fall within the protected class under the ADEA, and no material issue of fact exists here under the applicable federal law. See also Kodish v. United Airlines, Inc., 463 F. Supp. 1245, 1249 (D.Colo. 1979), aff'd on other grounds, 628 F.2d 1301 (10th Cir.1980) (A thirty-two year old plaintiff does not have an age discrimination claim under the ADEA). Even if plaintiff was within the protected class, the record is barren of any age discrimination.
Affirmed.
NOTES
[1] Section 47-21B(3)(a)[2] of the Township Code provides that oral interviews are conducted by "the Township Manager and/or his designees."
[2] At the deposition, the evaluators stated that fifteen out of the twenty-seven questions required specific responses.