704 A.2d 1017

BERGEN COMMERCIAL BANK, PLAINTIFF–RESPONDENT,
v. MICHAEL SISLER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued December 9, 1997—Decided January 20, 1998.

334

Before Judges DREIER, KEEFE and WECKER.

*Kevin M. Kiernan,* argued the cause for appellant (*McDonough, Kiernan & Campbell,* attorneys; *Mr. Kiernan,* on the brief).

*Elizabeth A. Daly,* argued the cause for respondent (*Genova, Burns & Vernoia,* attorneys; *James M. Burns,* of counsel, *Ms. Daly,* on the brief).

The opinion of the court was delivered by

DREIER, P.J.A.D.

Defendant, Michael Sisler, appeals from a summary judgment [1] dismissing his age discrimination claim against plaintiff Bergen Commercial Bank.

In 1993, plaintiff recruited defendant to work for Bergen Commercial Bank to operate its merchant and credit card programs. After several meetings, defendant entered into an agreement with plaintiff to become the Vice President of Credit Card Operations, earning a salary of $70,000 per year. Shortly before defendant's starting date, Anthony M. Bruno, the chairman and co-founder of Bergen Commercial Bank, asked defendant his age. Defendant replied that he was twenty-five years old. According to defendant, Bruno appeared shocked. Bruno then told defendant not to disclose his age to anybody because it would be embarrassing if other people at Bergen Commercial Bank learned that defendant had been hired at such a young age as a vice president and at such a high salary.

On September 1, 1993, defendant commenced his employment at the bank. Eight days later, Bruno and Mark Campbell, the president and CEO of Bergen Commercial Bank, expressed dissatisfaction with defendant's work and indicated that he might be terminated. At the same time, they suggested that defendant relinquish his position and become a consultant. Defendant refused, and thereafter he was demoted. Following a meeting on January 21, 1994, in which defendant's poor job performance was

---

[1] Although this motion was made pursuant to *R.* 4:46–2 and was ostensibly a summary judgment motion, it was entered prior to the completion of discovery and was, in effect, a motion to dismiss for failure to state a claim upon which relief can be granted. *R.* 4:6–2e.

discussed, plaintiff fired defendant after less than five months' employment.

After negotiations concerning defendant's potential age discrimination claim broke down, defendant informed plaintiff that he intended to file a lawsuit. Before defendant could initiate his suit, plaintiff commenced this action on August 11, 1994, against defendant for damages resulting from the conversion of files, breach of duty of loyalty, intentional interference with business relations, and trespass.[2] These claims were later dismissed without prejudice to allow this appeal.

Defendant filed an answer and counterclaim asserting violations based on age discrimination under the New Jersey Law Against Discrimination (LAD) and breach of the compensation agreement. Although interrogatories were still outstanding and defendant had not yet had an opportunity to depose Bruno and Campbell, plaintiff moved for summary judgment on defendant's claim of age discrimination on the ground that the LAD's prohibition of age discrimination did not apply to twenty-five-year-old claimants. The trial judge granted plaintiff's motion for summary judgment on defendant's claim of age discrimination.

If defendant's claim of age discrimination states a cause of action, it is obvious that the absence of complete discovery should preclude the entry of summary judgment under *R.* 4:46–5(a). Even when such discovery is completed, it is probable from the certifications already filed by the parties that there would be factual issues requiring resolution by a jury. The judge, however, entered summary judgment based solely upon statutory construction, not the factual posture of the case, thus presenting solely a legal issue for our review.

---

[2] According to plaintiff, after defendant was discharged, he entered his office and removed several computer files and downloaded data concerning Bergen Commercial Bank's operations. On February 2, 1994, defendant returned to plaintiff two computer disks and several files, but there was uncertainty about whether the files were complete. Later, it was allegedly discovered that defendant had deleted certain computer files.

This case is governed by two sections of the LAD. The first is *N.J.S.A.* 10:5–4, prohibiting age discrimination:

All persons shall have the opportunity to obtain employment ... without discrimination because of race, creed, color, national origin, ancestry, [or] age ... subject only to conditions and limitations applicable alike to all persons.

The LAD also proscribes unlawful employment practices or unlawful discrimination based on age under *N.J.S.A.* 10:5–12a:

It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:

a. For an employer, because of race, creed, color, national origin, ancestry, age ... to refuse to hire or employ or to bar or to discharge or require to retire, unless justified by lawful considerations other than age, from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

Plaintiff urges that we follow a decision of this court, *Burke v. Township of Franklin*, 261 *N.J.Super.* 592, 619 *A.*2d 643 (App.Div. 1993), which held that a thirty-nine-year-old plaintiff was not eligible to bring an age discrimination claim under the LAD or the equivalent Federal Age Discrimination in Employment Act (ADEA), 29 *U.S.C.A.* § 623(a) and § 631(a). *Id.* at 602, 619 *A.*2d 643. Defendant claims that *Burke* was wrongly decided and that any discharge based upon age violates the statute. He further asserts that even if he is not a member of a protected class under the LAD, his age discrimination claim is valid under a reverse employment discrimination analysis.

In *Burke*, the court determined that a police examination procedure for filling vacant sergeant positions was neither arbitrary nor capricious, nor did it violate the LAD or ADEA, because the plaintiff there, being under forty years old, did not fall within the protected class under either Act. 261 *N.J.Super.* at 601–02, 619 *A.*2d 643. The *Burke* court relied upon *Giammario v. Trenton Bd. of Educ.*, 203 *N.J.Super.* 356, 361, 497 *A.*2d 199 (App.Div.), *certif. denied*, 102 *N.J.* 336, 508 *A.*2d 212 (1985), *cert. denied*, 475 *U.S.* 1141, 106 *S.Ct.* 1791, 90 *L.Ed.*2d 337 (1986) and its analysis of the ADEA. The court noted that 29 *U.S.C.A.* § 631(a) provided that "prohibitions in this chapter shall be limited to individuals who are at least 40 years of age." Plaintiff in *Burke* therefore

clearly did not fall within the federal protected class. 261 *N.J.Super.* at 602, 619 *A.*2d 643.

It is true that the *Giammario* case had ruled that age discrimination claims in employment should be "analyzed by examination of federal cases arising under Title VII and the ADEA." 203 *N.J.Super.* at 361, 497 *A.*2d 199. However, the context in which this statement was made in *Giammario* was whether a court should refer to the ADEA or Title VII to interpret the LAD in a limited area, namely, whether a plaintiff has established a *prima facie* case of discrimination. *Id.* at 361–63, 497 *A.*2d 199. *See also Grigoletti v. Ortho Pharm. Corp.*, 118 *N.J.* 89, 97, 570 *A.*2d 903 (1990) (stating that "[i]n a variety of contexts involving allegations of unlawful discrimination, this Court has looked to federal law as a key source of interpretative authority.") In *Giammario*, the reference was proper because the language of the federal and state statutes was similar. 203 *N.J.Super.* at 361, 497 *A.*2d 199. *See also Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55, 81, 389 *A.*2d 465 (1978) (interpreting sex discrimination standards in order to achieve uniformity in the law).

▆ We determine, however, that this analysis is not applicable here because the standards for age discrimination claims under the LAD and the ADEA are different. Unlike the ADEA, there is no minimum age limit established in the LAD. According to Rosemary Alito, *New Jersey Employment Law* (1992): "Unlike the Federal Age Discrimination in Employment Act, which protects employees age 40 and older, the LAD's prohibition of age discrimination begins at age 18." *Id.* at § 77 (footnotes omitted). *See also Robinson v. Sizes Unlimited, Inc.*, 685 *F.Supp.* 442, 446 n. 8 (D.N.J.1988) (noting, in the context of comparing LAD and ADEA to determine whether a federal court may exercise pendent jurisdiction over LAD age discrimination class action claims, that the LAD applies to persons under forty). The Supreme Court was clear in *Grigoletti* that where the standards of the LAD are different from those of the ADEA, we will not hesitate to apply our own analysis. 118 *N.J.* at 107–08, 570 *A.*2d 903 (giving

examples of altered gender and handicap discrimination proce-
dures).

We now turn to the trial judge's interpretation of the LAD
itself. We note that although the judge had alluded to *Burke*, she
did not base her decision solely on its holding, but also on the
alleged legislative history of the LAD. Our review of this history
shows that it is scant at best, and there is no indication that the
two studies cited by the trial judge had been the basis for enacting
the statute. The alleged legislative history consists of a study,
published by the New Jersey Old Age Study Commission, *A
Positive Policy Toward Aging* (1957); a second study by the New
Jersey Department of State, Division of Aging, *Discrimination in
Employment Because of Age* (1959); and various bills submitted
to the Legislature between the time of these studies and the
addition of age as an impermissible standard by *L.* 1962, *c.* 37, § 4.
The motion judge stated that the cited

> reports clearly, unequivocally, without any doubt focused on a protected class that
> was the result of age; that is, persons above 40 years of age, and higher who were
> being deprived of employment, deprived of the benefits of long term employment
> and had to be protected in accordance with the legislature.

While the judge acknowledged that the LAD did not define the
minimum age requirement, she reiterated that the studies de-
scribed the protected group as being over forty years old.

Our examination of these studies, however, reveals that while
the studies define the age groups that were the topic of the
research, neither study supports the conclusion that the age group
in need of protection is persons above forty years of age. The Old
Age Study Commission's report is a generalized study providing
an overview of aging as it affects New Jersey and its citizens, and
discusses particular data gathered on workers sixty-five years old
and older. In its conclusion, the report stresses the need for
further investigation into the topic.

The Division of Aging's report describes the age group protect-
ed and its conclusions, but it does not refer to persons forty years
and over. It discusses the difference between age discrimination
of older workers and that encountered by younger workers. The

report also urges implementation of a minimum lower limit in future anti-age discrimination legislation, concluding that forty-five years would be a proper lower limit. The earlier bills submitted provide no guidance, and the only one produced by the parties has no explanation regarding the class of persons protected by the mere addition of the word "age" to the LAD list of prohibited considerations.

 We are mindful of the twin and sometimes conflicting principles for statutory interpretation. First, we have the duty "to apply the legislative intent as expressed in the statute's language, and ... not to presume that the Legislature intended something other than what it expressed by its plain language." *Essex Crane Rental Corp. v. Director Div. on Civil Rights,* 294 *N.J.Super.* 101, 105, 682 *A.*2d 750 (App.Div.1996). Another principle is that the surest way to misread a rule or statute is to read it literally while ignoring the overall legislative intent. *Prudential Ins. Co. of Am. v. Guttenberg Rent Control Bd.,* 220 *N.J.Super.* 25, 31, 531 *A.*2d 374 (App.Div.), *certif. denied,* 109 *N.J.* 505, 537 *A.*2d 1294 (1987). Accordingly, we will try to read the statute reasonably and the word "age" in the context of the Legislature's expressed intent.

The Legislature in 1962 merely added the word "age" to a list of prohibited bases for discrimination. *L.* 1962, *c.* 37. There are two issues to be considered in our construction of the word "age." First, is there any implication that there is a limitation to any particular age? Second, is there an implication that the protection is to be afforded only to discrimination based upon an older as opposed to a younger age?

██ The Legislature could have conformed the LAD to the federal model after enactment of the ADEA in 1967, by limiting the application of the LAD to persons forty and over. It did not choose to do so except in the area of public employment. *See*

*N.J.S.A.* 10:3–1.[3] Further, in *N.J.S.A.* 10:5–2.1 the statute pro-
vides: "[N]othing contained in this act ... shall be construed ...
to require the employment of any person under the age of 18."
Considering this language, it is difficult for us to interpret "age" in
this Act as did the court in *Burke,* as limiting the protections of
LAD to individuals over forty years old. Of course, the Act might
be construed to mean that this limitation merely means that an
ethnic discrimination claim by one under the age of eighteen will
not be heard, and that this provision is inapplicable to an age
discrimination claim. There is, however, no indication in the LAD
or its history that the age discrimination claim should be singled
out for disparate treatment. We therefore must respectfully
decline to follow *Burke.* We here determine that a LAD age
discrimination claim, unlike a federal ADEA claim, is not limited
to persons over the age of forty.

We next approach the second and more difficult question,
whether a person discriminated against because he or she is of a
young age falls within the protected class of the LAD. We
recognize that the legislative purpose in passing discrimination
laws in general, and this law in particular, is to correct an extant
problem in our society. In the area of age discrimination, it is
usually to protect the older worker from discrimination in favor of
the younger worker. *See* 29 *U.S.C.A.* § 623(a), § 631. While the
LAD does not expressly state this principle as its rationale,
neither does it express in its parallel provisions the well-known
problems of racial, ethnic or other covered discrimination against
specific racial, ethnic or other groups. Yet it has generally been

---

[3] Significantly, the Law Against Discrimination was amended in 1985 to
conform to similar federal standards and provide that "nothing herein contained
shall be construed to bar an employer from refusing to accept for employment or
to promote any person over 70 years of age...." *N.J.S.A.* 10:5–12, as amended
by *L.* 1985, *c.* 73, § 3a. Termination of persons over age seventy due to age
remains an unlawful employment practice. We note that the Legislature did not
take this opportunity also to set a minimum age that would trigger the protection
of the Act.

the case that the age element of this legislation has protected older workers.

Because the legislative intent concerning age discrimination is expected to be advanced by an application of the statute to discrimination against an older person, the members of the presumptive protected class are those who are replaced by younger workers. Plaintiff in this case, therefore, would not be a member of the usual class of persons intended to be protected by the LAD because he was replaced by an older worker, rather than a younger one.

■ That being said, our decisional law has recognized that there are those unusual cases of reverse discrimination in which the traditionally advantaged worker is discriminated against. *See Erickson v. Marsh & McLennan Co. Inc.*, 117 *N.J.* 539, 551, 569 *A.*2d 793 (1990) (reverse sexual discrimination involving a claim by a male employee); *Rivera v. Trump Plaza Hotel & Casino*, 305 *N.J.Super.* 596, 702 *A.*2d 1359 (App.Div.1997) (reverse discrimination not proven where male casino workers were not permitted to wear hair styles acceptable for female employees). We view this matter, therefore, as a reverse discrimination case, which must be analyzed in that context. We will reason by analogy from the other protected classes noted in the Act. We have no doubt that in each of the other categories mentioned, if a person in the traditionally advantaged class was discriminated against in hiring based on his "race, creed, color, national origin, ancestry ... marital status, affectional or sexual orientation, familial status, or sex," a reverse discrimination claim would lie under the Act. *N.J.S.A.* 10:5–4. See *Erickson, supra*, where the Court stated that the LAD was applicable in a claim of gender discrimination against a male employee. 117 *N.J.* at 551–54, 569 *A.*2d 793.

As noted by Judge Mikva in *Parker v. Baltimore & Ohio R.R.*, 652 *F.*2d 1012, 1016–18 (D.C.Cir.1981), a Title VII case, a background of prior unlawful considerations of race, made racial consideration a prohibited factor in a reverse discrimination case.

Twelve years later, Judge Mikva expanded on the *Parker* theme in *Harding v. Gray*, 9 *F*.3d 150 (D.C.Cir.1993):

[I]f a more qualified white applicant is denied promotion in favor of a minority applicant with lesser qualifications, we think that in itself raises an inference that the defendant is "that unusual employer who discriminates against the majority." A rational employer can be expected to promote the more qualified applicant over the less qualified, because it is in the employer's best interest to do so. And when an employer acts contrary to his apparent best interest in promoting a less-qualified minority applicant, it is more likely than not that the employer acted out of a discriminatory motive.

[*Id.* at 153–54, quoting *Parker*, 652 *F*.2d at 1017.]

In such a case, once there is a *prima facie* showing of such reverse discrimination, the burden shifts to the employer to show a proper basis for dismissal. *Grigoletti, supra,* 118 *N.J.* at 107–08, 570 *A*.2d 903. The fact that the vast majority of cases involve the protection of minorities and older workers does not mean that the "protected class" will not be altered to permit a member of the majority "to show that his employer was the 'unusual employer who discriminates against the majority' and that he was intentionally discriminated against despite his majority status." *Ibid.* (quoting *Erickson,* 117 *N.J.* at 551, 569 *A*.2d 793, in turn quoting *Livingston v. Roadway Express,* 802 *F*.2d 1250, 1252 (10th Cir. 1986)).

For purposes of a *prima facie* case, it is important to distinguish between a discrimination claim by a member of the usual protected class, and a reverse discrimination claim because in the latter case, "the rationale supporting the rebuttable presumption of discrimination embodied in the *prima facie* elements does not apply." *Erickson, supra,* 117 *N.J.* at 551, 569 *A*.2d 793. Instead, the first prong of the employee's proofs is modified, as noted earlier, to require "the plaintiff to show that he has been victimized by an 'unusual employer who discriminates against the majority.'" *Ibid.* It is an appropriate burden to place on a plaintiff in such an "unusual" discrimination case. *Ibid.*

Applying the Supreme Court's interpretation of other terms in the LAD's list of impermissible considerations, we can

see no reason why the same reverse discrimination analysis would not be applied to the factor of age. If, as here, defendant has made a *prima facie* showing (which remains viable after discovery) that his employment was terminated because particular bank officials determined that he was too young, as opposed to unqualified for the job, he has alleged a legally sufficient age discrimination claim under the LAD.

■ Defendant correctly asserts that even without additional discovery, he has here raised a genuine issue of fact with regard to the employer's motive. *Romano v. Brown & Williamson Tobacco Corp.*, 284 *N.J.Super.* 543, 551, 665 *A.2d* 1139 (App.Div.1995). Defendant claims that the chairman of the bank discovered his age, expressed shock and immediately wanted to discharge him, even though he had not actually started work. As proof, defendant points to the fact that the chairman allegedly told defendant not to divulge his age because he would be embarrassed if others discovered that he had hired such a young person for the position of vice president.[4] The statement made at the conference before defendant started to work does not, of course, clearly establish age discrimination or give rise to any mandatory inference of such discrimination based upon defendant's age. This is why there must be further discovery.

■ The flexibility of the four-part formulation from *McDonnell Douglas Corp. v. Green*, 411 *U.S.* 792, 93 *S.Ct.* 1817, 36 *L.Ed.2d* 668 (1973), approved in *Erickson, supra*, 117 *N.J.* at 549–50, 569 *A.2d* 793, has frequently been recognized. Where, as here, plain-

---

[4] Further, eight days after defendant commenced employment he was called to a meeting to discuss his performance. After this very brief period of time, the chairman and president stated that they did not think that the employment was "going to work." They indicated a desire to make some changes and were considering discharging defendant. The possibility of working something out, such as a consultant's position, was also discussed. His termination less than five months later, allegedly without any further indication of specific deficiencies in his work, could raise at least an inference that the discharge was based upon plaintiff's young age.

tiff proffers direct evidence of a discriminatory intent on the basis of his youth, he has apparently satisfied the first prong of a *prima facie* case under a modified *McDonnell Douglas* formulation. By offering evidence that the plaintiff viewed defendant's young age in a negative light, defendant established himself as a member of a broader protected class: persons discriminated against due to age. As was noted in both *Harding v. Gray, supra,* and *Parker v. Baltimore & Ohio R.R., supra,* the first *McDonnell Douglas* criterion is modified in a reverse discrimination case to proof of an unusual discriminatory environment, which is the "functional equivalent" of membership in the usually protected minority. *Harding,* 9 *F*.3d at 153; *Parker,* 652 *F*.2d at 1018. In fact, *Harding* adds a second alternative test to satisfy the first *McDonnell Douglas* criterion, namely the presence of "background circumstances" that indicate that the employer is discriminating against the majority. In Judge Mikva's words, "evidence indicating that there is something 'fishy' about the facts of the case at hand ... raises an inference of discrimination." 9 *F*.3d at 153. The judge further elaborated:

> Apparently, we have never had occasion to state clearly that the second type of "background circumstance" may create a prima facie case by itself. Accordingly, we will take this opportunity to hold precisely that. "Background circumstances" need not mean "some circumstance in the employer's background." On the contrary, other evidence about the "background" of the case at hand—including an allegation of superior qualifications—can be equally valuable.
>
> [*Ibid.*]

We agree. *See also, Murphy v. Milwaukee Area Technical College,* 976 *F.Supp.* 1212, 1217 (E.D.Wis.1997) (collecting authority in accord).[5]

---

[5] There are, however, other cases that do not even place such a limited additional burden on a plaintiff claiming reverse discrimination. *See Hill v. Burrell Communications Group, Inc.,* 67 *F*.3d 665, 668 n. 2 (7th Cir.1995); *Wilson v. Bailey,* 934 *F*.2d 301, 304 (11th Cir.1991); *Young v. City of Houston,* 906 *F*.2d 177, 180 (5th Cir.1990). Because *Erickson* places New Jersey with the majority in applying the "unusual employer" test, we need not discuss these cases in any detail.

The modified *prima facie* case of discrimination therefore requires (1) proof that defendant belongs to a member of a protected class (as that class may be expanded if the *Erickson* test is met); (2) he was performing a job at the level that met the employer's legitimate expectations; (3) he was nevertheless fired; and (4) the employer hired someone else to perform the same work after he was discharged. *See Erickson, supra,* 117 *N.J.* at 549–50, 569 *A.*2d 793; *Clowes v. Terminix Int'l, Inc.,* 109 *N.J.* 575, 597, 538 *A.*2d 794 (1988).

As an at-will employee, defendant could of course be discharged for any reason other than one which violates public policy. *Woolley v. Hoffmann–LaRoche, Inc.,* 99 *N.J.* 284, 291–92, 491 *A.*2d 1257 (1985). But defendant has articulated a factual basis which, if proven, could substantiate a claim of unlawful reverse discrimination. Thus his complaint should not have been dismissed. On the other hand, after discovery the facts may appear differently, and a new motion for summary judgment might be considered, applying the standards of *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 666 *A.*2d 146 (1995). Plaintiff retains the burden of proving intentional discrimination. That burden is to prove that age was a motivating determinative factor in the decision to terminate his employment. *Miller v. CIGNA Corp.,* 47 *F.*3d 586, 597 (3d Cir.1995). *Cf. Rendine v. Pantzer,* 276 *N.J.Super.* 398, 432, 648 *A.*2d 223 (App.Div.1994), *modified on other grounds,* 141 *N.J.* 292, 661 *A.*2d 1202 (1995) (sex discrimination claim). As we noted at the outset, the summary judgment entered here was in effect a dismissal for failure to state a claim upon which relief could be granted. As such, the complaint was mistakenly dismissed.

The summary judgment is reversed, and the matter is remanded to the Law Division for further proceedings.